BLUEGRASS CANNING CO. et al. v. STEWARD et al.

STEWARD et al. v. BLUEGRASS CANNING CO. et al.

(Circuit Court of Appeals, Sixth Circuit. December 14, 1909.)

Nos. 1,956, 1,957.

1. SALES (§ 273*)—WARRANTIES—IMPLIED WARRANTY OF FITNESS.

Where a definite article is specifically ordered from the manufacturer and furnished, although it is known by both parties that it is required for a particular purpose, there is no implied warranty that it shall be suitable for such purpose.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 772–776; Dec. Dig. § 273.*

Contracts for sale of things to be produced or manufactured, see note to Star Brewery Co. v. Horst, 58 C. C. A. 363.]

2. EVIDENCE (§ 441*)—PAROL EVIDENCE TO CHANGE WRITTEN CONTRACT—SALE AND WARRANTY.

Where a written contract for the sale of manufactured articles is complete and unambiguous, a warranty not contained therein cannot be added by parol.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1790, 2035; Dec. Dig. § 441;* Sales, Cent. Dig. § 721.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. APPEAL AND ERROR (§ 226*)—ISSUES NOT PRESENTED TO LOWER COURT.

A judgment respecting costs will not be reviewed unless the attention of the trial court was called to the grounds of objection thereto, and proper exception was reserved.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1324; Dec. Dig. § 226.*]

4. ATTACHMENT (§ 139*)—EFFECT OF DEFECTIVE BOND—KENTUCKY STATUTE.

Under Ky. Civ. Code Prac. § 198, which as construed by the state courts requires a plaintiff in attachment to give a bond in double the amount of his claim, and section 682, providing that, if the bond be judged defective, a new and sufficient one may be given within a reasonable time to be fixed by the court, the failure of a plaintiff to give a bond in twice the amount of his claim does not render the attachment void, but voidable only, and a motion to discharge it is properly overruled.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 354, 355; Dec. Dig. § 139.*]

5. BANKRUPTCY (§ 156*)—PENDING ACTION BY BANKRUPT—ATTACHMENT—CONTINUANCE BY SURETY.

On the bankruptcy of the plaintiff in an attachment suit and the refusal of the trustee to continue the suit, a surety on the attachment bond may be allowed to continue it in the bankrupt's name for his own protection.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 156.*]

In Error to the Circuit Court of the United States for the Western District of Kentucky.

Action by the Bluegrass Canning Company and others against L. & J. A. Steward. Judgment for plaintiff, and both parties bring error. Affirmed.

G. W. Jolly, for Bluegrass Canning Co.

C. S. Walker, for L. & J. A. Steward.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

LURTON, Circuit Judge. This was an action for damages by the vendee for the breach of a contract for the sale of 750,000 Steward's sanitary cans, suitable for packing tomatoes, and a counterclaim by the vendor. There was a judgment for plaintiff for part of its claim, less a part of the defendant's counterclaim. Each party has sued out a writ of error.

On February 12, 1904, the Blue Grass Canning Company signed in duplicate a written order in these words:

"Columbus, O., February 12, 1904.

"L. & J. A. Steward, Rutland, Vt.

"Gentlemen: Please enter our order for seven hundred and fifty thousand (750,000) tin cans as follows:

"About 365 M. Standard three-pounds at               $20.75
"About 375 M¼ 5½ in. tall cans at                    23.00
"Freight equalized with Hoopston, Ill.

"Usual allowance made by us of two cans per thousand for leaks and all can leaks over that to be paid for cans and contents as usual caused by defective manufacture.

"Shipments in car load lots, one car in June and two cars in July and other shipments as hereafter specified during August, September and October. Four

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

machines to be furnished (seamers) us at $350.00 each, to be paid for half October first after packing season and before January 1, 1905.

"Usual terms sight draft against bill of lading.

"Blue Grass Canning Company,

J. N. Grant, Manager."

Accepted,

"L. & J. A. Steward."

This was accepted by the vendor, L. & J. A. Steward, in writing, as shown above, and one copy retained by each.

The parties will hereafter be designated simply as vendor and vendee.

Under this order 86,140 cans were shipped and received and used by the vendee. Some 8,000 of these cans proved defective for some reason, either because the cans were badly made or because the seaming machines supplied under the same contract were not capable of making them airtight. Some 200,000 other cans were shipped, but, failing to get a definite guaranty in respect to them, they were rejected. Thereupon this shipment was attached by the vendee, in the hands of the carrier, and this action for damages begun. The damages averred to have been sustained were of two kinds: First, actual damages resulting from the loss of 8,000 cans, with their contents, aggregating some $700; and, second, damages alleged to have been sustained through the failure of the vendor to supply them with the full number of sanitary cans up to the contract and with seaming machines fit to make the cans airtight when filled. The latter kind of damages were said to amount to some $14,000. There was a judgment for the plaintiff for some $600 on account of the first kind of damages, offset to the extent of $350 by a counterclaim set up by the vendor for the price of one seaming machine, which had been delivered, but not paid for.

The court excluded evidence of an alleged oral contract made antecedent to the writing set out heretofore. This oral agreement was declared upon as the complete contract between the parties; the writing of February 12, 1904, being treated as a mere order made in pursuance of and under the prior oral contract.

The alleged complete oral agreement, as stated in the petition, differs from the agreement as reduced to writing and signed by both parties only, in that it is stated that:

"It was understood and agreed between the plaintiff and defendants that an allowance of two cans out of each thousand of said cans should be expected and deducted for all imperfections in all said cans, and that the remainder of said cans should be perfect and should be so made by defendants as to be airtight and perfect and when sealed would be airtight and prevent the atmosphere from entering and perfectly preserve the tomatoes and contents therein."

Upon this matter the writing says:

"Usual allowance of two cans per thousand for leaks and all can leaks over that to be paid for cans and contents as usual caused by defective manufacture."

In respect of the seaming machines, the oral contract is thus stated:

"And defendants further agreed with the plaintiff that said four seaming machines should be so constructed as that said cans could be perfectly sealed and made airtight therewith."

The contract of sale as reduced to writing included no representations, warranty, or guaranty as to these machines. All that is said about them is:

"Four machines to be furnished (seamers) us at $350.00 each to be paid for half October first after packing season and before January 1, 1905."

The material difference between the preceding parol negotiations and the written contract or order which resulted is that something was said in the nature of a warranty that the seaming machines to be supplied should answer the purpose intended by the buyer, and perfectly seal and make airtight the cans to which they should be applied. This warranty was not embodied in the writing, which evidently was intended by both parties to include the terms and conditions of the sale. The machines purchased are specifically designated in the order accepted. They were delivered and put into operation. It is not claimed that any defect in their operation was known to the vendor and unknown to the vendee. They were adapted to perform the work expected to be done. That the results may have proved unsatisfactory, because some of the cans proved leaky after being filled and subjected to high pressure in the cooking operation, is as much as is averred in the pleadings. But that a warranty results from the mere sale of a definite article upon a specific order for a particular article, even when the thing is required for a particular purpose, is not supported by the settled rules of law. In Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510, 518, 12 Sup. Ct. 46, 48, 35 L. Ed. 837, the rule is thus stated:

"Where a known, described, and definite article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still, if the known, described, and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer."

If the buyer desired a warranty that these machines would make airtight, without regard to other conditions, every can sealed through their use, it should have demanded it and included it in the final agreement of purchase.

That the written contract fully expressed the final agreement is apparent. It was complete and perfect upon its face, and wholly without ambiguity. It was not error to exclude evidence of a warranty by parol which would operate as an addition to the written contract. The case is governed by Seitz v. Brewers' Refrigerating Company, cited above. and Huntington v. Toledo, etc., Railroad Co., 175 Fed. 532, where the subject of adding a new term, by parol, to a written agreement, is fully considered by Judge Warrington, speaking for this court.

The other errors assigned by the vendee relate to this exclusion of evidence, tending to show a different contract from that embodied in the writing, and we need not say more than that there was no error of which the vendee can complain.

We have been urged to correct the judgment of the court disallowing either party costs. This suit was removed from the state court, and does not therefore come within the terms of section 968 of the Revised Statutes (U. S. Comp. St. 1901, p. 702), which provides that,

when a plaintiff in a suit originally brought in the Circuit Court shall recover less than $500, he shall not be allowed his costs. The difficulty is that no exception was taken in time to this judgment, nor was the trial judge's attention called to the fact that the suit had been removed from a state court, and had not been originally brought in the Circuit Court. See Kreager v. Judd (C. C.) 5 Fed. 27. Judgment in 1,956 affirmed.

This brings us to the writ of error sued out by the defendants below and numbered on the calendar 1,957, a separate transcript having been filed quite unnecessarily in aid of this cross-writ.

The principal error relied upon is the action of the court in not discharging an attachment which had been levied upon some 200,000 cans shipped to the plaintiffs in the hands of a railway carrier, being cans which the plaintiffs had refused to receive, as before stated.

The action was begun in the state court, and removed, for diversity of citizenship, into the court below. Simultaneously with the issuance of the attachment there issued a writ of summons which was served upon one of the defendants. The jurisdiction of the court does not, however, depend upon the attachment, for both defendants entered their appearance, without reservation, removed the case, joined in a general demurrer, answered, and filed a counterclaim. The only apparent reason for desiring this court to rule upon the sufficiency of the attachment which was issued in this case is to enable the defendants to maintain an action for damages, in case it should turn out to have been wrongfully issued. And the only ground upon which it is said to have been void is that the bond upon which it issued was not in double the amount of the plaintiff's claim. The fact that the defendants were nonresidents of the state of Kentucky was ground for an attachment under the Kentucky statute. The affidavit was also in compliance with the statute.

Section 198 of the Kentucky Code of Civil Practice reads as follows:

"The order of attachment shall not be issued by the clerk, until a bond has been executed in his office by one or more sufficient sureties of the plaintiff to the effect that the plaintiff pay to the defendant all damages which he may sustain by reason of the attachment, if the order be wrongfully obtained, not exceeding double the amount of the plaintiff's claim."

It would seem that the Kentucky court has construed the requirement that the bond shall be for a sum "not exceeding double the amount of the plaintiff's claim," as meaning that the bond shall be in double the sum of the plaintiff's debt and interest. See McDaniel v. Sappington, 3 Ky. 94; Samuel v. Brite, 3 A. K. Marsh. (Ky.) 317. The irregularity in the attachment pointed out is that, although the plaintiff stated its claim for damages as exceeding $14,000, it issued upon a bond in the sum of $7,000. The amount of this bond was fixed at that sum because the petition, after stating the full claims to be for $14,500, says:

"But the plaintiff asks for a general attachment against the defendants' property for the amount and to the extent of $3,500."

A motion to discharge the attachment because the bond was not in

double the amount of the entire damages claimed would have raised several questions: First, whether the decisions of the Kentucky court do certainly construe the Code provision as requiring a bond in double the amount of plaintiff's claim; second, whether a plaintiff may not ask for an attachment for an amount less than his claim, and whether, if he be content with the security thus obtained for part only of his debt, a bond in double the amount of his debt for which he asks an attachment is not a compliance with the statute. Finally, such a motion would raise the question of whether the attachment might not be saved by a new bond. From an order made on October 4, 1904, it may be inferred that a motion to discharge the attachment had been made. The ground of the motion is not indicated. That order was in these words:

"On the 4th day of October, A. D. 1904, came the plaintiff by George W. Jolly, its attorney. Came also the defendants by C. S. Walker, their attorney, and the court, being fully advised of the plaintiff's motion for the appointment of a receiver herein and for a sale of the property attached herein and on the motion of the defendants to discharge the attachment, and also on the general and special demurrer to the petition, delivered an opinion in writing which is ordered to be filed.

"Thereupon the plaintiff by its attorney and with leave of the court withdrew its motion for the appointment of a receiver herein, and, pursuant to said opinion, it is ordered that the said motion of the plaintiff for a sale of the attached property be overruled, to which the plaintiff excepts that the motion of the defendants to discharge the attachment herein be overruled, to which the defendants except; that the demurrers to the petition be each overruled, to which the defendants except. The defendants are given time to and including the 25th day of October to move, answer, or plead further."

From a short opinion copied into the transcript it appears that the court said about such a motion this:

"The motion made is to discharge the attachment, but, as the grounds of attachment stated by the plaintiff are sufficient under our Code (section 194), I think the motion to discharge it should be overruled, whatever might be the result of a motion to require an additional or a new bond."

Later the defendants acted upon this hint, and moved the court to require a bond in double the amount of the plaintiff's claim. The transcript fails to show that the court ever ruled upon this motion, and contains no exception for failing or refusing to act upon the motion. The presumption upon such a situation is that the application was waived or abandoned.

Later another motion was made to discharge the attachment; one of the reasons assigned being that the bond was not in double the plaintiff's claim. Action, by order of the court, was postponed until final hearing of the cause.

At the November term, 1908, the cause came on to be heard by a jury upon the issues, when, by direction of the court, the jury returned findings upon two issues submitted: First, for the plaintiff upon the second and third paragraphs of the amended petition in the sum of $624.-61, and for the defendants, on their counterclaim, in the sum of $350. Whereupon the court rendered a judgment in favor of the plaintiff for $274.61, being the amount found for the plaintiff, less the counterclaim found for the defendants, but refused to allow costs to either party upon the theory that, as the recovery was for less than $500, section

968 of the Revised Statutes applied. The court further adjudged that the attachment should be sustained. No exception was taken to this judgment sustaining the attachment, nor to any part of the judgment upon the verdict. Some two months later the defendants asked leave to enter an exception to the judgment sustaining the attachment and make the bill of exceptions show exceptions so taken. This was denied, and the bill of exceptions fails to show any exceptions taken in time by the defendant below to the judgment against them for $274.-61, or to the judgment sustaining the attachment. Neither does it show any exception to the refusal of the court to allow the plaintiff a judgment for costs.

A separate bill of exceptions prepared by the defendants was disallowed, the court properly ruling that a single bill of exceptions was enough to enable both parties to assign error and prosecute a writ of error.

If we assume that the exceptions found in the order of October 4, 1904, set out above, to the action of the court denying the motion to quash the attachment, raise the question as to the voidness of the attachment, and that it was not essential that the ground for the motion should appear, we are of opinion that the action of the court was not erroneous, inasmuch as the attachment was at most voidable and not void, although the bond was not in double the sum of the damages claimed.

Section 682 of the Kentucky Civil Code of Practice reads as follows:

"If a bond provided for by this Code shall be adjudged to be defective, a new and sufficient one may be executed in such reasonable time as the court may fix with the same effect as if originally executed."

The decisions, holding an attachment void when the bond was not in double the amount of the plaintiff's claim, of McDaniel v. Sappington, Hardin (Ky.) 100, Martin v. Thompson, 3 Bibb (Ky.) 252, and Samuel v. Brite, 3 A. K. Marsh. (Ky.) 317, were all antecedent to this section 682. But in Banta v. Reynolds, 3 B. Mon. (Ky.) 80, Chief Justice Robertson for the court drew a sharp distinction between a voidable and void attachment writ, holding in that case that a writ was not void, so as to make a constable executing it liable, merely because the bond was not for double the debt and interest. The later decisions construing and applying section 682 are Bailey v. Beadles, 7 Bush. (Ky.) 384; Bank of Frankfort v. Thomason, 66 S. W. 604, 23 Ky. Law Rep. 1957. Fleitas v. Cockrem, 101 U. S. 304, 25 L. Ed. 954, was a case from Louisiana where the court applied the well-settled rule of the Louisiana Courts and is not applicable here.

Pending the suit below the canning company was adjudicated a bankrupt, and this fact was shown in the case. The creditors declined to prosecute the suit. The court below allowed the suit to go on in the name of the bankrupt upon the execution of a bond indemnifying the bankrupt against costs by J. E. Gunther, a surety upon the attachment bond, but announced that it would dismiss the case if the defendants would release the sureties upon the attachment bond. This was declined, and the motion to dismiss the suit because of the plaintiff's bankruptcy was denied. The surety upon the attachment bond

had a direct interest in the successful prosecution of the suit, and, if he was willing to indemnify the bankrupt, was properly allowed to go on with the case for his own protection. The bankruptcy of the corporation did not dissolve it. 2 Clark & Marshall, Private Corporations, p. 863. While the bankrupt trustee may intervene and prosecute a pending suit if he will, yet, if he does not, we see no reason why the bankrupt may not go on with it if he wishes. Loveland on Bankruptcy (3d Ed.) p. 428.

There are no other assignments of error which need to be specially noticed. None of them are well taken.

Judgment affirmed. The plaintiffs in error in 1,957 will pay costs in that case.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes