SIMON CASADY & COMPANY, Appellants, v. OSCAR M. HARTZELL et al., Appellees.

**BANKRUPTCY:** Attachment Lien—Delivery Bond—Nullification by Bankruptcy Proceeding. An attachment lien is wholly destroyed by the filing of a petition in bankruptcy within four months, followed by an adjudication of bankruptcy. (Federal Act, July 1, 1898, Ch. 541, Sec. 67f, Comp. Stat. 9651.) The attachment *lien* being carried down, a *delivery* bond given by the defendant in attachment, under Sec. 3909, Code, conditioned for the delivery of the property, etc., to satisfy any judgment rendered against such defendant, is likewise carried down, and the surety is no longer liable thereon.

*Appeal from Madison District Court.*—HON. W. H. FAHEY, Judge.

THURSDAY, FEBRUARY 18, 1915.

REHEARING DENIED FRIDAY, SEPTEMBER 24, 1915.

ACTION on certain notes and an overdraft aided by attachment. After the property levied on was discharged by the execution of a delivery bond, the defendants were adjudged bankrupts. Thereupon, plaintiff amended the petition by praying that judgment be enjoined in order to adjudicate defendants' liability as a basis for an action against the surety on the delivery bond. The relief was denied and plaintiff appeals.—*Affirmed.*

*A. A. McGarry,* for appellants.

*Parsons & Mills* and *A. W. & P. R. Wilkinson,* for appellees.

LADD, J.—A petition was filed June 23, 1908, praying for judgment on four notes, of the face value of $3,454.84, and an overdraft of $426.49, with accrued interest. This petition was aided by a writ of attachment which was levied on certain real estate and a large amount of personal property. On the same day, the defendant, O. M. Hartzell, with Frank L. Hall as surety, released the personal property from the levy by executing a delivery bond in the penal sum of $9,000, conditioned that if the defendants ''shall deliver said property or its estimated value ($25,000) as aforesaid to said sheriff to satisfy any judgment that may be rendered against said defendant in said suit within twenty (20) days after the rendition thereof, then this obligation to be void; otherwise to remain in full force and virtue.'' An answer, setting up that defendants had been adjudged bankrupts and asking that the action abate, was filed May 5, 1911. An amendment to the petition was filed October 4, 1913, in which the issuance and levy of the writ of attachment, the execution of the delivery bond and the adjudication that defendants were bankrupts on the 1st and 10th days of August, 1908, were alleged, and also that, in order to hold the surety (Hall), it was necessary first to obtain judgment against defendants for the purpose of fixing the liability of Hall, whereupon it should be perpetually enjoined, and such judgment was prayed. The defendants first demurred to the petition, and when the demurrer was overruled, answered, in substance pleading their discharge in bankruptcy as a defense. The issues were submitted on an agreed statement of facts, from which it appears that the indebtedness was as stated, amounting to $6,418.51 March 4, 1914; that the levy of the writ and the execution of the bond, as well as the adjudication in bankruptcy, were as recited; and that the personal property levied on belonged to O. M. Hartzell, was worth $21,500, and was taken possession of by the trustees and sold under the orders of the bankrupt court, and the proceeds

1. BANKRUPTCY: attachment . lien : delivery bond : nullification by bankruptcy proceeding.

applied to the partial extinguishment of the liens. As the indebtedness may not be enforced against defendants, the sole purpose of obtaining judgment against them is to fix the liability of the surety on the delivery bond. Our statute provides that "The defendant, or any person in whose possession any attached property is found, or any person making affidavit that he has an interest in it, may, at any time before judgment, discharge the property attached, or any part thereof, by giving bond with security, to be approved by the sheriff, or after the return of the writ by the clerk, in a penalty at least double the value of the property sought to be released, but if that sum would exceed double the amount of the claim for which an attachment is sued out, then in such sum as equals double the amount of such claim, conditioned that such property or its appraised value shall be delivered to the sheriff, to satisfy any judgment which may be obtained against the defendant in that suit, within twenty days after the rendition thereof. This bond shall be filed with the clerk of the court." (Sec. 3909, Code.)

The sections following relate to ascertaining the value of the property, and Sec. 3911 declares that if the principal did not own the property at the time, or it was exempt at the time, either fact would be a defense. No such defense is interposed, and the only issue is whether, under the peculiar facts of the case, the conditions of the bond may be enforced, it being contended, on the one hand, that under Sec. 67f of the Bankruptcy Act of 1898 (30 U. S. Stat. at Large, 565), the levy of the writ of attachment and delivery bond became void, and on the other, that, by virtue of Sec. 16 (30 U. S. Stat. at Large, 550), the liability of the surety on this bond was saved.

Sec. 16 reads: "The liability of a person who is a codebtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt."

Sec. 67f provides: "That all levies, judgments, attach-

ments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment or other lien shall be preserved for the benefit of the estate; and thereupon, the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid.''

The language of this last section differs from that on the same subject (Sec. 14) of the Act of 1867 (14 U. S. Stat. at Large, 522), which read:

''And such assignment shall relate back to the commencement of said proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of said proceedings.''

Such difference is said to furnish a sufficient basis for distinguishing some of the cases construing that act and to justify a different conclusion on identical facts under the later act. For the purposes of the case at bar, it is not important whether the attachment was merely ''dissolved'' or rendered ''null and void'' by the bankruptcy proceedings; for, in either event, these terminated all obligation on the delivery bond. It is apparent that the effect of Sec. 67f of the Act of 1898 is not to avoid attachment, levies or liens therein referred to against all the world, but merely as against the trustee in bankruptcy and those claiming under him, so

that the property may pass to and be distributed by him among the creditors of the bankrupt, and such is the view entertained by several well-considered cases. *McKenney v. Cheney,* 11 Am. B. Rep. (Ga.) 54; *Frazee v. Nelson,* 179 Mass. 456 (61 N. E. 40). There is some conflict in the authorities as to whether Sec. 67f has any application to voluntary bankruptcy; but as the question is not argued, we shall assume, as the parties hereto have, and in harmony with the weight of authority (see *McKenney v. Cheney, supra,* with cases therein cited), that said section is applicable to voluntary as well as involuntary bankruptcy. Had four months or more intervened between the levy of the writ of attachment and the filing of the petition in bankruptcy, that section would not have been applicable, and plaintiff might be entitled to the relief prayed. *Hill v. Harding,* 130 U. S. 699, 703 (32 L. Ed. 1083, 1084) ; *Butterick Pub. Co. v. Bowen Co.,* 26 Am. B. Rep. (R. I.) 718; *Kendrick & Roberts v. Warren,* 110 Md. 47 (72 Atl. 461).

As less than four months intervened, the provisions of Sec. 67f must be given effect and the right of plaintiff to judgment necessarily depends on whether the conditions of the delivery bond were avoided thereby. It will be observed that the function of the delivery bond is merely to discharge the property. It does not dissolve the attachment, but takes the place of the lien. The attachment continues, the bond being conditioned to turn the property or its value over to the sheriff when required, to satisfy the debt, and thereby discharge the same. The obligation is not to satisfy the judgment but to deliver to the sheriff the property levied on, out of which to satisfy the execution against the property condemned by the judgment for its satisfaction. Until then, the attachment does not cease and the bond merely stands in the place or stead of the property levied on. The consequence is that dissolving the attachment, as under the Bankruptcy Act of 1867, or rendering it "null and void" and discharging and releasing the property affected by the levy or attach-

ment, under the Bankruptcy Act of 1898, necessarily carries down with it the delivery bond conditioned for the forthcoming of the property to be disposed of under the writ of attachment. The attachment having been nullified, the lien of any levy thereof is dissolved, and the happening of the contingency on which the efficacy of the bond depends is rendered impossible; for, no attachment or levy remaining, judgment sequestering the property to the satisfaction of the debt may not be entered. In other words, as the lien of the attachment remains in legal contemplation through the delivery bond as representing the property, it inevitably follows that whatever destroys the attachment destroys all liability upon the bond. *Schunack v. Art Metal Novelty Co.,* 26 Am. B. Rep. (Conn.) 731.

Any other conclusion would lead to the absurd result that the surety on such a bond might be compelled to deliver property included therein or pay its value to discharge the portion of the debt remaining unsatisfied by dividends in bankruptcy, notwithstanding the fact that the identical property had been seized by the trustee in bankruptcy by virtue of Sec. 67f, reduced to money and distributed to the creditors of the estate. The liability of the surety in such a case is not affected by the discharge in bankruptcy, but is avoided in consequence of the adjudication of bankruptcy. The efficacy of the delivery bond, as it stood for the property attached and in lieu thereof, ceased with the attachment and became "null and void," because of the adjudication that the defendant Hartzell was a bankrupt. We have discovered no decision precisely in point, but our conclusion finds support in *Windisch-Muhlhauser Brewing Co. v. Simms,* 55 South. (La.) 739; *Crook-Horner Co. v. Gilpin,* 112 Md. 1 (28 L. R. A. (N. S.) 233; 136 Am. St. 376); *Payne v. Able,* 7 Bush (Ky.) 344 (3 Am. R. 316); *Hamilton v. Bryant,* 114 Mass. 543; *House v. Schnadig,* 235 Ill. 301 (85 N. E. 395); *Keyes v. Shannon,* 8 Rob. (La.) 172 (41 Am. D. 299); *Klipstein v. Allen-Miles Co.,* 136 Fed. 385; Collier on Bankruptcy, 377.

The annotator in *Stull v. Beddeo*, 14 L. R. A. (N. S.) 507, 510, deduces this conclusion, after a review of the authorities:

"Where, however, the attachment proceedings are not commenced more than four months prior to the bankruptcy proceedings against the debtor, no valid lien is obtained, and the rule sustaining the liability of the surety on the theory that the bond stands in lieu of the property attached no longer obtains; and the doctrine that the discharge of the debtor or principal will prevent the happening of the contingency upon which the liability of the surety depends, and therefore operate to release him, will apply."

*McCombs v. Allen*, 82 N. Y. 115, is often cited as holding to the contrary, but an examination thereof discloses that the undertaking of the sureties there considered was to pay on demand the amount of judgment which might be recovered in an action then pending against the defendant in attachment proceedings, and it appeared that judgment had been rendered against the principal and sureties in the lower court, so that the contingencies upon which the liability of the surety depended actually happened.

As no recovery might be had on the bond, there is no occasion for the entry of the judgment such as is prayed.— *Affirmed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.