HOILES ET AL. *v.* FIDELITY & DEPOSIT CO. OF
MARYLAND ET AL.

*Bankruptcy—State courts do not take judicial notice thereof,
when—Judgment against principal binds surety exclusive
of all defenses, when—Surety liable upon attachment bond
of bankrupt principal, when—Surety fails to intervene
and plead principal's discharge in bankruptcy.*

1. Where a suit is pending in a state court, and, thereafter,
   bankruptcy proceedings are prosecuted against the de-
   fendant, the state court does not take judicial notice of
   such proceedings, and unless the proceedings of the state
   court are stayed by the federal court, or the proceedings
   of the federal court set forth as a defense in the state
   court, the state court may proceed as if no bankruptcy
   proceedings had been begun.
2. A surety on a bond given in the course of legal proceed-
   ings is bound by a judgment against the principal to
   the exclusion of all defenses which were or might have
   been set up by the principal, except that of fraud or
   mistake.
3. If an attachment bond is given in a suit in a state court
   within four months of the bankruptcy of said principal,
   and the claim against such principal is one that is dis-
   chargeable in bankruptcy, and is so discharged during
   the pendency of the suit, and if such discharge in bank-
   ruptcy is plead and proved, the court will not permit a
   judgment to be entered and stayed against such principal
   for the purpose of establishing a liability of the surety
   on such attachment bond; in that event, the surety, be-
   ing bound by the terms of the bond to respond only in
   the event of a judgment being rendered against the prin-
   cipal, is not liable, for the reason that the event has
   not happened on which the liability of the surety de-
   pends.
4. A surety having signed an attachment bond is charged
   with notice of all the proceedings thereafter in such suit
   that may affect the surety's liability, and if such surety
   does not intervene in said suit, and plead and prove, or

see that the principal pleads and proves, such discharge, but permits judgment to be entered, such judgment is conclusive against the surety and such surety is liable on the bond according to its terms.

(Decided November 2, 1923.)

ERROR: Court of Appeals for Lorain county.

Mr. W. P. Duffy, for plaintiffs in error.
Mr. F. M. Stevens, for defendant in error Fidelity & Deposit Co.

WASHBURN, J. This is an error proceeding. The case was submitted to the court below upon an agreed statement of facts. It was agreed that the plaintiffs were partners and that the defendant Fidelity & Deposit Company was a corporation organized under the laws of the state of Maryland, with principal offices in that state; that on February 15, 1921, plaintiffs commenced an action in the Court of Common Pleas of Lorain county, Ohio, against the other defendant in this action, Philip Cohn, "for the recovery of money," and at the same time, by proceedings regularly had, procured an order of attachment under which attachment certain goods belonging to Philip Cohn were attached; that on March 14, 1921, Philip Cohn applied for a delivery of the goods to him, and together with such company, as his surety, in the presence of the sheriff, who then had possession of the goods under such writ of attachment, executed a bond to plaintiffs whereby Cohn and his surety acknowledged themselves to be bound to the plaintiffs in the sum of $342; that the goods and chattels so attached, valued at the sum of $250,

should be forthcoming to answer the judgment of the court in said action, or, in default thereof, they bound themselves to pay plaintiffs the sum of $250, the appraised value of said goods and chattels; that such bond was delivered to the sheriff and approved by him; that thereupon said goods were delivered to said Philip Cohn; that at the September term of court, 1921, Philip Cohn having failed to file an answer in the case, plaintiffs recovered a judgment against Cohn for $153.47 and costs, taxed at $34.83; that thereafter an order of redelivery and of sale as on execution was issued to said sheriff and the sheriff thereupon demanded delivery of the goods to him, or so much thereof as would satisfy such judgment and costs; that Philip Cohn refused to deliver the same, or any part thereof, and the sheriff thereupon demanded of Cohn the payment of such judgment and costs, which was then refused; and that no part of said judgment or costs has been paid.

These facts so admitted, if unaffected by other facts, would clearly entitle plaintiffs to a judgment against the defendant surety company, who was regularly served with process in this action, for the amount claimed, which was $188.30, with interest from September 19, 1921.

To destroy the effect of these admitted facts and to substantiate certain allegations made by it in its pleadings the surety company presented a statement of certain other facts, which plaintiffs agreed were facts, but which they insisted were not competent to be considered by the court in this case, which additional facts relate to bankruptcy proceedings of said Philip Cohn, all of which occurred after the giving of the bond and

the release of the property so attached, and none
of which was plead or brought to the attention of
the court in the original action.

It was the contention of the plaintiffs in the
court below, and is their contention in this court,
that inasmuch as none of these additional facts
was plead or in any manner called to the attention
of the court in the case in which the attachment
bond was given and in which the judgment was
obtained against Philip Cohn, it is not proper to
consider such facts in this case on behalf of the
surety company, the only defendant making a de-
fense in this action.

With this contention we are inclined to agree.
It is well settled that where a suit is pending in
a state court against a defendant against whom
thereafter bankruptcy proceedings are prosecuted
in the federal court, the state court does not take
judicial notice of such federal proceedings, and
unless the proceedings of the state court are
stayed by the federal court, or the proceedings of
the federal court are set forth in the pleadings
in the state court, the state court may proceed to
judgment in all respects as if no bankruptcy pro-
ceedings had been begun. The mere adjudication
of bankruptcy in the federal court of a defendant
in a suit pending in a state court does not deprive
the state court of jurisdiction in such case. In-
deed, the action in the state court may concern a
matter which is not a provable claim in bank-
ruptcy, in which event the bankruptcy proceed-
ings, even if plead in the state court, would not
prevent the state court from proceeding to judg-
ment. According to the provisions of the bank-
ruptcy act there are certain claims as to which the

bankruptcy act does not affect the jurisdiction or proceedings of the state court. *Kreitlein* v. *Ferger*, 238 U. S., 21 (59 L. Ed., 1184).

By 39 Stats. at L., 999, Sec. 17; Section 9101 Barnes' Fed. Code; Section 9601 U. S. Comp. Stats., a discharge in bankruptcy does not release a bankrupt from a claim due for taxes, or from a liability for obtaining property by false pretenses, or for wilful or malicious injuries, or for alimony due or to become due, or for maintenance or support of a wife or child, or from other liabilities enumerated in that statute.

In the case at bar it does not appear from the agreed statement of facts that the claim in question was not one of those enumerated in the section, the agreed statement of facts merely stating that the original action against Cohn was "for the recovery of money," and, therefore, for aught that appears, the original action in which the attachment bond was given, and the judgment taken, which fixed the surety company's liability on the bond, was such an action as might not be controlled by the bankruptcy proceedings of Cohn.

And, furthermore, if such original suit was one which would be affected by the bankruptcy proceedings, it appears affirmatively that no discharge in bankruptcy was plead in said original suit, nor were the bankruptcy proceedings in any manner called to the attention of the state court in the original action, and if they had been, and the court had nevertheless rendered the judgment it did, such judgment would have been conclusive upon the parties thereto and their privies, the same not having been reversed or modified.

Said surety company, while not a formal party

to that original action, did nevertheless file a bond therein, by which it bound itself to do certain things if the court rendered judgment against Cohn; by its contract and by the very nature of its obligation it was in privity with Cohn in that action; if no bankruptcy proceedings had intervened, and Cohn had a good defense to the action, such as the defense of payment, or the statute of limitations, and failed to plead such defense, and by reason thereof judgment was taken against him, which remained unquestioned and in full force, such surety company would be bound by such failure of Cohn and could not thereafter in a suit upon the bond have the benefit of such defenses; and, in like manner, if Cohn had been discharged in bankruptcy, and that fact, if properly plead in that action would have prevented a judgment being taken, without which there would be no liability of the surety on the bond, such surety, being in privity with Cohn and having a direct interest in preventing a judgment being taken, could have intervened in the suit and properly plead the bankruptcy proceedings (*Bluegrass Canning Co.* v. *Steward,* 175 Fed., 537; *Auto Truck Equipment Co.* v. *Wiskeman* [Ninth District Court of Appeals opinion in Summit county case No. 699]; Section 11370, General Code; *Callendar* v. *Painesville & Hudson Rd. Co.,* 11 Ohio St., 516, 518; *General Construction Co.* v. *Village of Lakewood,* 17 C. C., N. S., 165, but having failed to do so such surety cannot thereafter, in a suit upon the bond, claim the benefit of such discharge unless there is some provision in the bankruptcy act which changes the manifest and logical rule which should be applied in case of the failure of

Cohn to plead the defense of payment, or the statute of limitations, as above stated. Before taking up that question, it may be well to refer to the additional facts which are admitted to exist, if they are pertinent in this action.

It will be remembered that the original action was begun on February 15, 1921, and that the attachment bond was given and the property released on March 14, 1921; that thereafter, on March 23, 1921, certain creditors of Philip Cohn filed in the United States District Court of Maryland, in the United States of America, an involuntary petition in bankruptcy, and on that day that court appointed certain receivers of the property and assets of Philip Cohn, who duly qualified; that on the 4th day of April, 1921, there was filed in said bankruptcy proceedings a list containing the names of the creditors of Philip Cohn, and that plaintiffs were listed among such creditors, their addresses appearing, also the date and amount of their claim; that on April 27, 1921, Philip Cohn made his offer of composition to pay said creditors, among them plaintiffs, twenty-five percentum of their claims; that plaintiffs did not appear in the court and cause on May 11, 1921, at 10 o'clock, A. M., the day and time set for hearing upon such offer of composition; that on May 12, 1921, the U. S. District Court of Maryland confirmed said offer of composition and referred the same to the proper referee; that on June 4, 1921, the composition report of the referee in bankruptcy and his account were filed in the district court, and on June 15, 1921, said receivers sent plaintiffs through the U. S. mails their check for $25, which check was received and cashed by

plaintiffs at or about that time; that plaintiffs credited the proceeds of the check upon their account against Philip Cohn; that at and during all the times herein set forth Philip Cohn was in fact insolvent; and that plaintiffs took no actual part whatever in the bankruptcy proceedings herein mentioned, and took no actual part in the composition above mentioned save and except to cash said check as hereinbefore set forth, and save and except the receipt of such notices as are hereinbefore mentioned or referred to in the exhibits showing such bankruptcy proceedings.

Attention should be called to the fact that according to the agreed facts hereinbefore mentioned the judgment in the original action was taken against Cohn after all of the foregoing proceedings had been had in the bankruptcy court.

We assume, for the purpose of this opinion, that the composition referred to had the same effect as a discharge in bankruptcy, and that if the same had been plead in the original action a judgment against Cohn would have been defeated and the surety company would not be liable upon its bond. The question is: Can the surety company in this action upon its bond have the benefit of such facts? As before indicated, we think the surety company was so connected with Cohn as to be bound by his failure to plead such facts in the original action, and that it cannot now be heard to say in this action that there is no legal and binding judgment against Cohn in the original action, any more than Cohn could be heard to so say in this action.

The surety on a bond, given in the course of legal proceedings, submits itself to the acts of the principal, and is conclusively bound by a judgment

against the principal, to the exclusion of all defenses which were or might have been set up by the principal, and, where an action is brought upon an attachment bond, it is not competent for the surety to question the validity of the judgment against the principal on any ground other than fraud or mistake. In such case the judgment is as conclusive against the surety as against the principal. The surety by signing the bond became a *quasi* party to the suit, and is held to have notice of all the proceedings thereafter in the suit that may affect its liability on the bond; it cannot thereafter be heard to say that the judgment is wrong; if there were any errors in the judgment, it should, through its principal, have caused them to be corrected in a proper proceeding. *Richardson* v. *People's National Bank*, 57 Ohio St., 299. The same principles apply to a suit upon an attachment bond. *Jayne's Exrx.* v. *Platt,* 47 Ohio St., 262.

But it is claimed that in one respect, at least, the surety company is entitled to the benefit of these facts, and that by reason of the provisions of the bankruptcy act no valid judgment can be rendered in this action against the surety company; and that seems to have been the view of the court below. That claim is based upon Section 67 (*f*) of the bankruptcy act (36 Stats. at L., 842; Section 9151 (*f*), Barnes' Fed. Code; Section 9651 U. S. Comp. Stats.) which provides "that all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by

the levy, judgment, attachment, or other lien, shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt,'' unless under certain circumstances not applicable here.

The argument is that as less than four months intervened after the attachment and the giving of the bond the provisions of Section 67 ($f$) must be given effect and the right of plaintiffs to judgment necessarily depends upon whether the conditions of the delivery bond were avoided thereby; that the function of the delivery bond is merely to discharge the property; that it does not dissolve the attachment, but takes the place of the lien; that the attachment continues, the bond being conditioned to turn the property or its value over to the sheriff when required to satisfy the debt and thereby discharge the same; and that consequently the dissolving of the attachment under Section 67 ($f$) necessarily carries down with it the delivery bond conditioned for the forthcoming of the property to be disposed of under the writ of attachment. In other words, the attachment having been nullified, the lien of any levy thereon is dissolved, and the possibility of the happening of the contingency upon which the efficacy of the bond depends is rendered impossible, for, no attachment or levy remaining, judgment sequestering the property to the satisfaction of the debt may not be entered, and that, therefore, whatever destroys the attachment destroys all liability upon the bond. This is the view announced in the case of *Casaday & Co.* v. *Hartzell,* 171 Iowa, 325, which case was relied upon by the court below in justification of its judgment for the defendant surety company in the case at bar.

But the authority of that case as determinative of this case is destroyed by the fact that in that case "an answer, setting up that defendants had been adjudged bankrupts and asking that the action abate, was filed."

What the court really held in that case was that where a debtor had been sued, his property attached, a bond given, and the property released, the surety agreeing in the bond that if judgment was rendered against the debtor the surety would deliver the property to satisfy such judgment, and the debtor being thereafter discharged in bankruptcy, which discharge included the debt sued on, and such discharge being properly plead in the suit, the court would not permit a judgment to be entered and stayed against the debtor for the purpose of establishing a liability of the surety on the bond. The court did say (page 330) that "the efficacy of the delivery bond, as it stood for the property attached and in lieu thereof, ceased with the attachment and became 'null and void,' because of the adjudication" that the debtor was a bankrupt.

We think that a sounder reason for the decision, which was undoubtedly correct, is that the bankruptcy of the debtor having, as is commonly said, discharged the debt, there was no foundation or basis for a judgment against the debtor, and the surety, being bound only in the event of a judgment being rendered against the debtor, is released for the obvious reason that the event has not happened on which the liability of the surety was made to depend. *Wolf* v. *Stix*, 99 U. S., 1. And that, so far as a surety on an attachment

bond is concerned, is the full force and effect of Section 67 (f) of the bankruptcy act. That section does not render all judgments, liens, etc., taken within four months of bankruptcy, absolutely and for all purposes void and of no effect, without any action of a court and regardless of the character of the judgment or lien, or the manner in which or by whom the question is raised. *Doyle* v. *Heath*, 22 R. I., 213, 47 Atl., 213.

Its object is to preserve the *property* of the bankrupt for his creditors: a creditor may not, within said four months, establish a claim to a preference, or a right to share in the *bankrupt's property* on a basis not accorded other creditors; but it does not prevent an enterprising creditor from getting security for his claim, not out of the *property* of the debtor, but by the obligation of a third party as surety for his debt; that, on condition that a judgment is recovered for his debt, is what is secured by a bond to release attached property, and the only effect on that security of the subsequent bankruptcy of the debtor is the prevention of his securing his judgment against the debtor, and to have that effect the bankruptcy must be plead and proved in the action against the debtor. (1 Loveland on Bankruptcy, Section 298; 2 Bates Pleading, page 1066.) No question of pleading was involved, but otherwise the view above expressed was, in effect, taken by the Supreme Court of Maine in a decision rendered April 11, 1923, *Marks* v. *Outlet Clothing Co.*, 122 Me., 406, 120 Atl., 427.

On this point we are aware that there are a number of decisions which support the argument hereinbefore referred to in *Casaday* v. *Hartzell*,

*supra,* but we think the sounder view is the one we have tried to express.

What has been said in reference to the effect of the discharge of the bankrupt applies with equal force to the defense of estoppel, wherein it is claimed that plaintiffs should not be permitted to recover on this bond because they had notice of the hearing on the offer of composition and received and cashed a check for $25 sent to them by the receivers in bankruptcy, although they otherwise took no actual part in the bankruptcy proceedings or composition. The check was credited on their claim against Cohn and they thereafter recovered judgment against Cohn for the balance, as they had a right to do unless Cohn or his surety or someone in his behalf plead such acts and claimed an estoppel, which was not done. (2 Bates on Pleading, page 1603.) The same is true as to accord and satisfaction. (2 Bates on Pleading, page 900.)

The judgment against Cohn in the action in which he had an opportunity to make all these defenses stands unreversed and unmodified; he is not complaining and could not be heard to collaterally attack the binding force and effect of that judgment; and his surety was so interested with him as to be likewise precluded from collaterally attacking said judgment.

The surety for a consideration contracted in the bond with plaintiffs that if judgment was recovered against Cohn in that action such surety would produce the property or its appraised value to satisfy such judgment; except for the one condition named that obligation was absolute and unconditional; and there was no exception in case of

bankruptcy. In our view of the law, such surety, having permitted the happening of the one condition upon which its liability depended, cannot now in this action use the bankruptcy proceedings to escape liability on its bond. As Judge Grant would say, "It is fishing behind the net."

The agreed facts entitled plaintiffs to a judgment in the court below, and they are entitled to that judgment here.

The judgment of the Common Pleas Court is reversed because contrary to law, and final judgment may be entered for plaintiffs.

*Judgment reversed.*

Like entries may be made in case No. 265, ROBERT J. HALL *v.* FIDELITY & DEPOSIT Co., and case No. 264, THE W. J. DONNELLY CONSTRUCTION Co. *v.* FIDELITY & DEPOSIT Co., as these cases were in like manner submitted and the reasons above given apply with equal force thereto.

FUNK, P. J., and PARDEE, J., concur.