12-2246-cr
United States v. Restrepo

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of November, two thousand thirteen.

PRESENT: GERARD E. LYNCH,
    SUSAN L. CARNEY,
    CHRISTOPHER F. DRONEY,
         *Circuit Judges.*
------------------------------------------------------------------

UNITED STATES OF AMERICA,

      *Appellee*,

      v.          No. 12-2246-cr

CARLOS ARTURO PATINO RESTREPO,
AKA "Patemuro,"

      *Defendant-Appellant*,

LUIS ESCOBAR AKA "Curramba", AKA "Amaretto",
LUIS HERNANDO GOMEZ BUSTAMENTE, AKA
"Rasguno", ARCANGEL DE JESUS HENAO MONTOYA,
AKA "El Mocho", ORLANDO SABOGAL ZULUAGA,

1

AKA "El Mono Sabogal", AKA "Caraqueso", AKA "Alberto Sabogal", JAIME MAYA DURAN, AKA "Alejandro", JHONNY CANO CORREA, AKA "Flechas", AKA "Santiago", ALDEMAR RENDON, AKA "Mechas", JOSE DAGOBERTO FLORE RIOS, AKA "Chuma", GILBERTO SANCHEZ MONSALVE, AKA "Vitamina", ABELARDO ROJAS, AKA "El Mono", JUAN CARLOS GIRALDO FRANCO, AKA "Tortuga", DAVINSON GOMEZ O'CAMPO, AKA "Gordo", JAIME ROJAS FRANCO, MARTA AGUDELO CASTANO, AKA "Marta Cano", JULIA AGUDELO CASTANO, CARLOS ALBERTO GOMEZ, AKA "El Nino", AKA "Cejas", JOSE LUIS VALLEJO, ARIEL RODRIGUEZ, AKA "El Diablo", GABRIEL VILLANUEVA, AKA "Truchi", HECTOR ALONSO SALAZAR MALDONADO, AKA "Tornillo", JAIR RENDON, AKA "Negro Jair", PEDRO BERMUDEZ, AKA "El Arguiticto",

*Defendants.**

-------------------------------------------------------------------

| APPEARING FOR APPELLANT: | SUSAN C. WOLFE, ESQ., (Jeffrey C. Hoffman, *on the brief*), Hoffman & Pollok, LLP, New York, New York |
| --- | --- |
| APPEARING FOR APPELLEE: | ALLEN L. BODE, (David C. James, *on the brief*) Assistant United States Attorneys *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York. |

---

* The Clerk of Court is respectfully directed to amend the official caption in this case to conform to the caption above.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Wexler, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Carlos Arturo Patino Restrepo ("Patino")[1] appeals from his conviction, after a jury trial, for conspiracy to: (1) distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, (2) import cocaine into the United States in violation of 21 U.S.C. § 963, and (3) distribute and import cocaine internationally in violation of 21 U.S.C. § 963, alleging multiple constitutional violations constituting reversible error. We assume the parties' familiarity with the underlying facts, to which we refer only as necessary to explain our decision to affirm the conviction.

1.  <u>Challenges to Jury Selection</u>

Patino argues that he was denied his Sixth Amendment right to be tried by an impartial jury because the magistrate judge informed potential jurors during jury selection that all testimony, even that of accomplice witnesses, must be accorded the same weight at trial. Patino claims that, as a result of this instruction, empaneled jurors evaluated the testimony of accomplice witnesses by a lesser standard of scrutiny than the law requires. Patino argues that the early instruction severely prejudiced him because the government's case-in-chief consisted almost exclusively of the testimony of accomplice witnesses. We agree with Patino that the magistrate judge's explanation of the law was insufficient, but we hold that Patino did not suffer any prejudice as a result.

The parties agree that we must review the instructional statement for plain error because Patino did not raise his objection at trial. Fed. R. Crim. P. 30(d), 52(b); *United*

---

[1] The defendant's proper surname is "Patino," and the parties refer to him as such in their briefs. This summary order therefore refers to the defendant as "Patino."

*States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009). Under a plain error standard of review, if we find that the magistrate judge's statements (1) constituted error, (2) that the error was plain, and (3) that the error affected substantial rights, then we (4) have discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Botti*, 711 F.3d 299, 310 (2d Cir. 2013). An error is considered "plain" if the mistake is apparent at the time of appellate review and "is so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object." *United States v. Brown*, 352 F.3d 654, 664-65 (2d Cir. 2003) (internal quotation marks omitted). A plain error affects the defendant's substantial rights where the error is prejudicial. *United States v. Marcus*, 628 F.3d 36, 42 (2d Cir. 2010). In the ordinary case, an error is prejudicial where there is a reasonable probability that the error affected the outcome of the trial. *Id.*

The correct standard for evaluating accomplice witness testimony is not, as the magistrate judge in this case maintained, to "treat [all witnesses] the same and give them the same weight and consideration." Mar. 21, 2011 Tr. at 73:23-24, A-162. Instead, the court must draw the jury's attention to the possible motivations of accomplice witnesses and instruct jurors to examine those motivations when determining the witnesses' credibility during deliberations. *United States v. Vaughn*, 430 F.3d 518, 523-24 (2d Cir. 2005). District courts provide a sufficient instruction by intelligibly identifying an accomplice witness's possible motivations for the jury's consideration. *Id.*

Where the court employs an incorrect or insufficient standard of the law in a preliminary instruction, however, a defendant is not necessarily prejudiced. Instead, we must examine the magistrate judge's misstatements within the context of the jury charge as a whole and the arguments made at trial. *See Vaughn*, 430 F.3d at 523, 524; *see also Botti*, 711 F.3d at 310-11. Viewing the record as a whole, the magistrate judge's error did not ultimately prejudice Patino. During jury selection proceedings, the magistrate

4

judge repeatedly paired the challenged instruction with the caveat that the trial judge would inform the jurors of the proper standard before their deliberations, which the trial judge ultimately did provide in the final jury charge. The jury selection also occurred over two weeks before the jury began its deliberations. As the United States Supreme Court has observed, "comments of the court and counsel during *voir dire* were surely a distant and convoluted memory by the time the jurors began their deliberations." *Penry v. Johnson*, 532 U.S. 782, 802 (2001).

Defense counsel also repeatedly challenged the credibility of the accomplice witnesses throughout trial. Where a judge gives an incomplete accomplice witness instruction before jury deliberations, the mistake is not fatal if the rest of the trial record demonstrates that the jury was aware of the need to carefully scrutinize the accomplice witnesses' testimony. *See*, *e.g.*, *Vaughn*, 430 F.3d at 522-24 (holding that the district court's failure to specifically inform jurors that they must scrutinize the testimony of cooperating witnesses with regard to how those witnesses could benefit by testifying was not prejudicial in light of the defense attorney's extensive attacks of the accomplice witnesses' credibility during opening, cross examination, and summation); *United States v. Velez*, 652 F.2d 258, 261 n.5 (2d Cir. 1981) (holding that although the trial judge failed to instruct the jury to scrutinize the cooperating witness's testimony, the error was not prejudicial because defense counsel argued forcefully in his summation that the accomplice witness was not credible). Here, Patino's lawyer attacked the credibility of the accomplice witnesses from the opening of the trial, calling the government's witnesses "admitted criminals, admitted drug traffickers, admitted killers, admitted liars, admitted corrupt police officers, every single one of them with much to gain." Mar. 22, 2011 Tr. at 209:19-22, GA-112. The defense attorney emphasized during his opening and closing statements that the jury was required to carefully scrutinize the testimony of the accomplice witnesses because they had much to gain from their

5

testimony. Even the prosecution encouraged jurors to consider the accomplice witnesses' testimony carefully in light of their criminal backgrounds during his opening statement.

Finally, the district judge provided thorough and correct instructions regarding accomplice testimony in the jury charge. These instructions provided careful, detailed explanations concerning how the jury should approach the testimony of accomplice witnesses, cooperating witnesses, and witnesses promised favorable treatment or immunity. The instructions identified why the jury should carefully scrutinize the testimony of accomplice witnesses in light of how such witnesses stood to benefit from their testimony as required by *Vaughn*. 430 F.3d at 523-24. Thus, the district court judge ultimately properly instructed the jury concerning the appropriate weight to give accomplice testimony during deliberations. Given the intervening events at trial and before jury deliberations, the magistrate judge's error during jury selection did not ultimately prejudice Patino. We thus reject Patino's argument that the magistrate judge's statements during jury selection constituted reversible error.

2. Ineffective Assistance of Counsel

Patino argues that his attorney's failure to object to the magistrate judge's erroneous instruction during jury selection amounted to a denial of his Sixth Amendment right to the effective assistance of counsel. We reject Patino's contention that his attorney's failure to object constituted ineffective assistance of counsel because, as we have already concluded, he suffered no prejudice as a result of the magistrate judge's erroneous statements.

When confronted with a claim of ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the

6

claim on the record before us. *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003). The United States Supreme Court has expressed a view that the trial court is typically the best forum for these claims. *United States v. Massaro*, 538 U.S. 500, 504-05 (2003). Accordingly, the Second Circuit has a "baseline aversion to resolving ineffectiveness claims on direct review." *Morris*, 350 F.3d at 39 (internal citation and quotation marks omitted). Nonetheless, if resolution of the ineffective assistance claim is either beyond doubt or in the interest of justice, then we may address the merits on direct appeal. *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004).

To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 690, 693 (1984). First, the defendant must identify the acts or omissions of counsel that could not have been the result of reasonable professional judgment. *Id.* at 690. Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant. *Id.* at 692-93. Specifically, the defendant must demonstrate that there is a reasonable probability that, but for the unprofessional errors, the proceeding would have led to a different result. *Id.* at 694.

Patino argues that his trial counsel's failure to object to the magistrate judge's incorrect statements during jury selection was outside of the range of reasonably professional conduct and ultimately prejudiced Patino. We need not decide whether counsel's failure to object to the erroneous instruction was deficient within the meaning of *Strickland*'s performance prong because there is no reasonable probability that, but for the failure to object, the result of Patino's trial would have been different. *See United States v. Chin*, 224 F.3d 121, 125 (2d Cir. 2000) (holding that because the defendant suffered no prejudice, it was unnecessary to decide whether his attorney's performance fell below an objective standard of reasonableness). The defense attorney's attacks on

7

the accomplice witnesses' credibility throughout trial and the proper jury instructions provided before deliberations remedied the magistrate judge's erroneous statement during jury selection. Patino ultimately suffered no prejudice as a result of his counsel's failure to object during jury selection, and we thus reject the contention that he did not have effective assistance of counsel on that basis.

3. Multiple Conspiracies Instruction

Patino asserts that the district court committed reversible error by not giving the specific multiple conspiracies instruction that he requested before deliberations. We see no error in the district court's charge, which conveyed the essence of the requested instruction.

A multiple conspiracies charge is required where several different conspiracies could be inferred from the evidence offered at trial. *United States v. Aracri*, 968 F.2d 1512, 1520 (2d Cir. 1992); *United States v. Maldonado-Rivera*, 922 F.2d 934, 962-63 (2d Cir. 1990). The charge is designed to assist the jury in determining whether a defendant's conduct was part of the single, comprehensive conspiracy charged by reminding jurors to separately consider each charged conspiracy and each defendant's conduct. *See Aracri*, 968 F.2d at 1520. The need for such an instruction stems from the potential "'spill over effect' of permitting testimony regarding one conspiracy to prejudice the mind of the jury against the defendant who is not part of that conspiracy but another." *United States v. Harris*, 8 F.3d 943, 947 (2d Cir. 1993).

A proper multiple conspiracies instruction must stress that in order to return a conviction, jurors are required to find that the single conspiracy charged existed and that the individual defendant knowingly participated in that conspiracy. *See United States v. Berger*, 224 F.3d 107, 114 (2d Cir. 2000). Providing an abbreviated multiple conspiracies instruction does not constitute reversible error if the charge emphasizes that there must be a finding of the single specific conspiracy charged and knowing

8

participation in the identified scheme by each defendant. *Aracri*, 968 F.2d at 1520-21. Where a multiple conspiracies instruction is required but is not administered or is articulated in a deficient manner, the failure constitutes reversible error only if the appellant can demonstrate that he suffered substantial prejudice. *Maldonado-Rivera*, 922 F.2d at 962-63. The possibility of prejudice is diminished where the defendant is tried alone. *See Harris*, 8 F.3d at 947; *United States v. Aguilar*, 352 F. App'x 522, 525 (2d Cir. 2009) (summary order).

Patino, who was tried as the sole defendant, requested a lengthy instruction which urged that if jurors found that Patino did not engage in the charged drug trafficking conspiracy, then the jurors were required to acquit him. The district court ultimately phrased the multiple conspiracies instruction as follows:

> You must decide whether the conspiracy charged in the indictment existed, and if it did, who were some of its members. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed. Similarly, if you find that the defendant was not a member of the conspiracy charged, then you must find the defendant not guilty, even though that defendant may have been a member of some other conspiracy.

Apr. 4, 2011 Tr. at 1451-52, A-303.

Even assuming without deciding that a multiple conspiracies instruction was required in this single-defendant case, *see Aguilar*, 352 F. App'x at 525 ("In any event, a multiple conspiracies charge is not called for simply because a defendant, standing trial alone, is charged with participating in more than one conspiracy"), the district court's charge was sufficient. The instruction adequately stressed that jurors must find that the single conspiracy charged existed and that Patino knowingly participated in that conspiracy, as required by *Berger*, 224 F.3d at 114. The instruction also informed the jurors that they must acquit Patino if they found that the conspiracy charged did not

exist or that the defendant engaged in a separate conspiracy that was not charged. *See Aracri*, 968 F.2d at 1520. Thus, the district court's articulation of the proper standard satisfied the requirements for a multiple conspiracies instruction. There is also no indication that Patino faced any prejudice as a result of the abbreviated instruction. Therefore, we reject Patino's contentions that no multiple conspiracies charge was given or that he was prejudiced by the abbreviated charge.

    4.  Prosecutorial Misconduct During Summation

Patino alleges that the Assistant United States Attorney made inappropriate remarks to the jury during his summation concerning the cooperating witnesses, including, "We searched for that coconspirator whose character was above reproach …. But you know, ladies and gentlemen, we couldn't find such a person, and I submit to you no such person exists." Apr. 4, 2011 Tr. at 1404, A-291. Applying the plain error standard to this unpreserved objection, we hold that the prosecutor's closing remarks constituted neither improper vouching nor the type of flagrant abuse that affects an appellant's substantial rights and requires reversal of the conviction. *See United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012); *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005).

It is improper for prosecutors to vouch for the testimony of government witnesses because it could cause jurors to trust the government's assessment of the evidence rather than their own. *See Williams*, 690 F.3d at 76 (quoting *United States v. Newton*, 369 F.3d 659, 681 (2d Cir. 2004)). A prosecutor is also specifically prohibited from expressing his or her personal beliefs about the truth or falsity of any testimony or evidence. *Carr*, 424 F.3d at 227. The prosecution is permitted, however, to respond to defense arguments that "impugn[] its integrity or the integrity of its case, and when the defense counsel have attacked the prosecutor's credibility or the credibility of the

10

government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion." *Id.* (quoting *United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994)).

An improper remark by a prosecutor will justify a reversal by this Court "only if it causes the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation marks omitted). In satisfying the plain error standard on appeal, a defendant-appellant must demonstrate not only that the error was clear and obvious but also that the remark constitutes "flagrant abuse" that "affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Williams*, 690 F.3d at 77 (internal citation, alterations, and quotation marks omitted). The United States Supreme Court has specifically warned that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Young*, 470 U.S. 1, 11 (1985); *see also United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir. 1992) ("It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required.") (quoting *Floyd v. Meachum*, 907 F.2d 347, 348 (2d Cir. 1990)).

The Assistant United States Attorney's comments during summation did not constitute improper vouching. The remarks do not suggest that jurors should trust the government's assessment of the witnesses' credibility rather than their own or that the prosecutors have information that was not presented to the jury. Instead, the prosecutor attempted to respond to the defense counsel's repeated attacks on the credibility of accomplice witnesses as sanctioned by *United States v. Thai* and *United States v. Carr*. *Carr*, 424 F.3d at 227 (quoting *Thai*, 29 F.3d at 807). Rather than vouching for the credibility of these witnesses, these remarks acknowledged the witnesses' potential

11

credibility problems. The arguments also did not mischaracterize the evidence as to Patino's role in the conspiracy.

The prosecutor's remarks are questionable, however, for a different reason. In stating that the government searched for a particular type of witness, but was unable to find one, the prosecutor could be taken literally as providing the jury with unsworn testimony, for which there was no foundation in the evidence, about the actual conduct of the government's investigation. But such a literal reading would be unrealistic. The argument was presumably intended, and was likely understood, as a mere rhetorical flourish on the common prosecutorial theme that "it would be preferable to have unimpeachable witnesses, but criminals only share their secrets with other criminals." We have repeatedly warned prosecutors to avoid such first-person formulations, *see United States v. Nersesian*, 824 F.2d 1294, 1328 (2d Cir. 1987) (warning that use of personal pronoun "I" in summation is "poor practice"), and prosecutors would be well-advised to avoid the formulation used here. But there is no likelihood that the jury was misled about the argument the prosecutor was making. We therefore conclude that these statements did not constitute the type of flagrant abuse that affects an appellant's substantial rights and requires reversal of the conviction. *See Williams*, 690 F.3d at 77; *Carr*, 424 F.3d at 227. Thus, we reject Patino's contention that the Assistant United States Attorney's comments during summation require the reversal of his conviction.

5. Alleged *Brady* Violations

Patino argues that his conviction should be vacated because the government failed to produce the statements of four individuals, Jose Luis Vallejo Tangarife, Nelson Cruz, Orlando Sabogal Zulaga, and Ivan Gonzalez-Bejarano, whom he alleges possessed exculpatory or impeaching information tending to disprove that Patino trafficked drugs with the Norte Valle Cartel in violation of *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). To establish a *Brady* violation, a petitioner must show that: (1) the

12

undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the prosecution's failure to disclose the evidence. *Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Evidence is not "suppressed" for *Brady* purposes if the defendant "either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006) (internal citation and quotation marks omitted); *see also United States v. LeRoy*, 687 F.2d 610, 619 (2d Cir. 1982) ("Here [the defendant] clearly was on notice of the facts necessary for him to take advantage of such exculpatory testimony as [the identified witnesses] might conceivably furnish …. Accordingly, we conclude that the Government was under no duty to advise [the defendant] of the allegedly exculpatory grand jury testimony.").

After a careful review, we reject Patino's allegations that the prosecutors suppressed evidence in violation of *Brady*. Patino has not demonstrated that Jose Luis Vallejo Tangarife possessed exculpatory or impeaching information that could serve as the basis of a *Brady* violation. There is also no evidence that Patino's attorney was unaware of the potential testimony of the other three identified individuals, Nelson Cruz, Orlando Sabogal Zulaga, and Ivan Gonzalez-Bejarano, prior to the trial, or that the prosecutors attempted to conceal the existence of these witnesses or any statements allegedly made by them. To the contrary, Patino's attorney filed motions which demonstrated that he was in possession of sufficient facts to know the identities of witnesses who had provided potentially impeaching statements and the substance of their communications with the government, specifically Nelson Cruz and Orlando Sabogal Zulaga. Patino's defense counsel also did not clearly indicate that he would have called these witnesses at trial in light of his trial strategy. The record also demonstrates that Patino's defense attorney spoke with Ivan Gonzalez-Bejarano twice

13

and had him brought to the Eastern District of New York but chose not to call him at the re-trial. Finally, Patino has failed to demonstrate that, even if the witnesses' statements were introduced at trial or the witnesses themselves testified to the vaguely exculpatory or impeaching information Patino alleges they possess, that there was a reasonable probability that this would have led to a different result. *See Strickler*, 527 U.S. at 280 (defining evidence as "material" for *Brady* purposes where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different") (internal quotation marks omitted). Thus, we reject Patino's argument that his conviction should be reversed due to *Brady* violations.

6. Prosecutorial Misconduct Before the Grand Jury

Patino alleges that the Assistant United States Attorneys engaged in misconduct before the grand jury concerning the use of hearsay testimony. After a review of the grand jury minutes, we conclude that the Assistant United States Attorney who presented to the grand jury provided a proper instruction regarding the hearsay used before the grand jury and thus did not engage in any misconduct. We therefore reject Patino's allegations of prosecutorial misconduct as grounds for overturning his conviction.

First, we reject the government's contention that because Patino failed to challenge the superseding indictment prior to re-trial he waived his prosecutorial misconduct objection on appeal. *See, e.g., United States v. Ruggiero*, 934 F.2d 440, 444, 446-48 (2d Cir. 1991) (permitting, without comment, an appeal from a final conviction premised on the claim, among others, that the prosecutor engaged in prosecutorial misconduct before the grand jury while obtaining an indictment); *United States v. Lombardozzi*, 491 F.3d 61, 66, 79-80 (2d Cir. 2007) (same).

14

However, dismissal of an indictment following conviction is an extraordinary remedy. This Court has stated that "[d]espite the high place the grand jury holds as an instrument of justice, the social costs of dismissing an indictment because of an imperfect grand jury proceeding are simply too high to accept when the defendant has been convicted after a full and fair trial and no harm has been done." *United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990) (internal citation, alterations, and quotation marks omitted); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 255-56 (1988) (expressing the same view); *United States v. Mechanik*, 475 U.S. 66, 70-71 (1986) (same). In order for prosecutorial misconduct to require a dismissal of the indictment, the prosecutor's conduct must amount to "a knowing or reckless misleading of the grand jury as to an essential fact," *Lombardozzi*, 491 F.3d at 79 (internal citation and quotation marks omitted), or "systematic and pervasive prosecutorial misconduct as would undermine fundamental fairness." *Brito*, 907 F.2d at 395 (internal quotation marks omitted).

The government is permitted to use hearsay evidence during its presentation to the grand jury; such use does not constitute prosecutorial misconduct where the jury is properly informed regarding the nature of the testimony. *Costello v. United States*, 350 U.S. 359, 360-63 (1956). Relying solely on hearsay evidence may cause an indictment to be invalid if "(1) the government misleads the grand jury into thinking it is receiving firsthand testimony when it is in fact receiving hearsay or (2) if there is a high probability that the defendant would not have been indicted had only nonhearsay evidence been used." *Ruggiero*, 934 F.2d at 447.

If the prosecutor provides an adequate instruction regarding the hearsay testimony, jurors should not be misled about the quality of the evidence they are receiving. In *United States v. Ruggiero*, we held that where the government fully informed grand jurors about the hearsay nature of the evidence they were considering,

15

their opportunity to see the original evidence, and their proper independent function in determining whether to return the indictment, grand jurors were not misled and the indictment was valid. 934 F.2d at 447, 448; *see also Brito*, 907 F.2d at 396 (observing that because "the prosecutor did warn the grand jurors, however clumsily, about the hearsay nature of the agent's testimony; and most importantly, the agent's testimony to the grand jury was concededly accurate[,]" the indictment was proper); *but see United States v. Hogan*, 712 F.2d 757, 761-62 (2d Cir. 1983) (dismissing an indictment where the prosecutor called the defendant a "real hoodlum" who should be "indicted as a 'matter of equity,'" and presented hearsay, double hearsay, speculation, and false evidence resulting in the jury being misled by the presentation); *United States v. Estepa*, 471 F.2d 1132, 1135-36 (2d Cir. 1972) (dismissing an indictment where the agent who testified had limited knowledge of the transaction at issue but likely misled grand jurors into thinking he was providing eyewitness testimony).

Here, the Assistant United States Attorney making the presentation to the grand jury provided a detailed introductory statement explaining that the testifying witness would be presenting the condensed testimony of other witnesses who had already testified. He explained that the witness would be relaying hearsay evidence and testifying to events and transactions that he did not personally witness. The Assistant United States Attorney also informed the grand jurors that they had a right to supplement the hearsay evidence by requesting that witnesses with firsthand knowledge testify before them. The complete transcripts of each witness's testimony were also made available for the grand jury's review, and the Assistant United States Attorney reminded the grand jurors of the transcripts' accessibility. It was also clear throughout the witness's testimony that he was not testifying based on firsthand knowledge but was rather reporting or summarizing the testimony of others. Therefore, the grand jurors were fully informed about the nature of the testimony, and the

16

Assistant United States Attorney did not mislead the jury. It was also likely, under *Ruggiero*, that Patino would have been indicted if solely nonhearsay evidence had been used; in fact, the trial jury convicted him based upon the testimony of witnesses who likely would have been called to testify before the grand jury had grand jurors requested firsthand evidence. *Ruggiero*, 934 F.2d at 447. Patino's other claims of abuse of the grand jury process are also rejected. We thus reject Patino's argument that we must reverse his conviction on the basis of prosecutorial misconduct relating to the grand jury presentation.

7. Violation of the Rule of Specialty

Finally, Patino challenges his conviction on the ground that the jury's consideration of pre-1997 evidence contravenes the Diplomatic Note by which he was extradited from Colombia and thus violates the rule of specialty. We hold that there was no violation of the rule of specialty in this case because the jury expressly convicted Patino based only on conduct that occurred after December 17, 1997.

The rule of specialty is a principle of international law that prohibits extraditing countries from prosecuting a defendant on charges other than those for which he was specifically extradited. *United States v. Levy*, 25 F.3d 146, 159 (2d Cir. 1994). This doctrine also requires an extraditing country to adhere to express limitations placed on prosecution by the surrendering country. *United States v. Cuevas*, 496 F.3d 256, 262 (2d Cir. 2007). Defendants who contest alleged violations of this rule pursuant to a treaty between the United States and the surrendering country generally have standing to contest perceived violations of the treaty. *Id.* Defendants from Colombia, however, are extradited pursuant to Resolutions by the Foreign Ministry called Diplomatic Notes. We have not yet decided whether a defendant has standing to allege violations of a Diplomatic Note. *See Cuevas*, 496 F.3d at 262; *see also United States v. Frankel*, 443 F. App'x 603, 606 (2d Cir. 2011) (summary order) ("We do not decide whether Frankel has

17

standing to assert the rule of specialty as a basis to challenge his sentence because his argument fails on the merits."); *United States v. Lopez-Imitalo*, 305 F. App'x 818, 819 (2d Cir. 2009) (summary order) ("We do not decide whether Lopez-Imitalo has standing to assert the rule of specialty as a basis to challenge his sentence because his argument fails on the merits.").

The Colombian Diplomatic Note permitting the United States to extradite Patino states that Patino must not be "judged or condemned" for pre-December 17, 1997 conduct. Therefore, under the rule of specialty, Patino could be tried only for crimes committed after December 17, 1997. Patino argues that submission of pre-December 17, 1997 evidence to the jury for consideration led to the jury "judging" him on the basis of pre-December 17, 1997 evidence in reaching their ultimate guilty verdict.

We decline to address the question of whether Patino has standing to challenge alleged violations of the Diplomatic Note because his argument fails on the merits. The district court in this case provided the jury with special interrogatories which specifically asked whether the jury found that the government proved the charges beyond a reasonable doubt with evidence of Patino's conduct *after* December 17, 1997. The jury answered yes. The jury therefore did not "judge or condemn" Patino for conduct prior to December 17, 1997. We reject Patino's contentions otherwise.

We have considered all of Patino's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

18