11-676-cr
*United States v. Williams*

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE SECOND CIRCUIT

August Term 2011

(Argued: March 22, 2012          Decided: July 6, 2012)

No. 11-676-cr

_____

UNITED STATES OF AMERICA,
*Appellee,*


-v.-


WALIK WILLIAMS,
*Defendant-Appellant.*

_____

Before:       SACK, LIVINGSTON, and LYNCH, *Circuit Judges.*

Defendant-Appellant Walik Williams ("Williams") appeals from a judgment of conviction and sentence imposed following a jury trial in the United States District Court for the Eastern District of New York (Block, *J.*). Williams contends that certain statements made by the prosecution during summation denied him a fair trial. Finding no plain error in the trial proceedings, we AFFIRM.

AMANDA HECTOR, Assistant United States Attorney (Amy Busa, Assistant United States Attorney, *on the brief*), *for* Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, NY, *for Appellee.*

EDWARD S. ZAS, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Defendant-Appellant.*

LIVINGSTON, *Circuit Judge*:

Defendant-Appellant Walik Williams ("Williams") appeals from a judgment of the United States District Court for the Eastern District of New York (Block, *J.*), entered February 11, 2011, convicting Williams, following a two-day jury trial, of one count of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(2), and sentencing him principally to 70 months' imprisonment. Williams argues that statements made by the prosecution during its summation and rebuttal summation deprived him of his right to a fair trial. He focuses in particular on criticisms by the prosecution of certain arguments made by the defense, on the prosecution's characterization of witness testimony as "the truth" and "the absolute truth," and on the prosecution's statement in rebuttal summation that "[t]his is not a search for reasonable doubt. This is a search for truth and the truth is that the defendant possessed that gun on July 25, 2009." No objection to these statements was made at trial.

We conclude that the Assistant United States Attorney ("AUSA") erred in her statement that "this is not a search for reasonable doubt[,] this is a search for truth . . . ." We find no other error in the prosecutor's summations and no procedural defect rising to the level of plain error. Accordingly, we AFFIRM the district court's judgment of conviction and sentence.

BACKGROUND

*1. The Government's Case*

The evidence at trial, which we review in the light most favorable to the government, *see United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004), established that Williams, having previously been convicted of a felony, was found in possession of a weapon on July 25, 2009, when two New York City Police Department ("NYPD") officers heard gunshots coming from the area of Marcy and Lexington Avenues in Brooklyn and, upon arriving at the scene in an unmarked car, saw Williams standing on the street, firing a gun.

Officer Kevin Brennan and Lieutenant Christopher Devaney were the principal prosecution witnesses. They were in an unmarked vehicle at the corner of Marcy and Lexington Avenues in Brooklyn at around 10:20 p.m. on the night of July 25, 2009, when they heard about six gunshots, followed by as many as fifteen shots, coming from Lexington Avenue. As they turned onto Lexington, they observed dozens of people running into buildings and jumping behind and under cars on the residential street. The officers first observed Williams firing his gun as they drove up Lexington Avenue. They then saw him run across the street, in front of their car. Williams, apparently unaware of the vehicle, next walked in their direction with the gun in his right hand.

Officer Brennan and Lieutenant Devaney testified that as Williams approached, he eventually made eye contact with the officers. At this point, Williams pinned his right hand to his side as if to conceal the weapon he was carrying. He then gestured toward the corner of Tompkins and Lexington Avenues, as if to guide them there. When Officer Brennan responded by jumping out of the car and identifying himself as a police officer, Williams began to run.

Officer Brennan pursued him. As he chased Williams from six to eight feet behind, Brennan saw Williams toss his weapon to the ground in front of 375 Lexington Avenue. Brennan, who never lost sight of Williams from the moment he first observed him, overtook Williams only a few blocks away. Officer Brennan thereafter recovered a .40 caliber pistol from the area where he had seen Williams' weapon discarded. The officers also found five spent .40 caliber shell casings in the area where they had observed Williams shooting—casings shown at trial to have been fired from the pistol they had recovered. Officer Brennan testified that at the precinct that night, during arrest processing, Williams asked him, in substance, why Williams had been arrested when "there was at least five guns out there."

*2. The Defense Case*

In her opening statement, defense counsel predicted that Officer Brennan and Lieutenant Devaney would commit perjury about the events of July 25, 2009

4

when they testified at trial, and that their stories would "defy common sense." The defense called two witnesses of its own. The first, Lashanda Haynes, testified that she was playing cards with her sister, Williams, and a friend at a table outside 385 Lexington Avenue when the shooting began. She ran, as did Williams. She never saw him shoot a firearm, although she could not rule out the possibility that he had a concealed weapon. Next, Phillip Martin, a retired NYPD detective, testified that if someone is firing a weapon, police procedure requires that officers take cover and notify other officers of a description of the shooter and the direction of his travel.

### 3. *The Summations*

The prosecution's initial summation began with a detailed discussion of Officer Brennan's testimony, and how it alone was sufficient to establish that Williams had possessed the gun and ammunition, as charged. The prosecution then reminded the jury about the defense contention, in its opening statement, that the officers' testimony would defy common sense. After summarizing and criticizing arguments put forward by defense counsel in the cross examination of various witnesses (such as that the officers' testimony should not be believed because they never radioed a description of the man they saw or called for backup), the AUSA said:

> Ladies and gentlemen, it's the defendant's suggestions that defy logic here. And you know why, because the evidence in this case is overwhelming. And so the defense has to grasp at straws, has to

focus on distractions and that's why you see a whole parade of these suggestions that just don't hold any water.

They are distractions from the facts that are relevant and critical to the decision that you need to make in this case and that is whether the defendant possessed that gun and ammunition on July 25.

Now, we just talked about a number of the irrelevant and distracting ways in which the defense has attempted to take your eyes off of the ball, to divert your attention from the real question that you have to decide.

Now let's talk about how it is that you know that Officer Brennan is telling you the truth.

App. 294. The AUSA then canvassed several reasons that Officer Brennan's testimony should be believed, pointing, among other things, to the corroborating testimony provided by Lieutenant Devaney and to the forensic evidence. The AUSA concluded by asserting that all the evidence, considered together, proved its case beyond a reasonable doubt.

In the defense summation, counsel argued that a number of putative inconsistencies in the testimony of the prosecution's witnesses rendered that testimony incredible and that the infirmities in this testimony, when combined with other alleged shortcomings in the prosecution's case, precluded the government from meeting its burden of proof beyond a reasonable doubt. The defense focused, among other things, on: (1) the supposed unlikelihood that Officer Brennan would chase after Williams without ensuring the discarded weapon had been secured; (2) the absence of DNA or fingerprint evidence; (3) the

6

alleged failure of the officers to radio for help; and (4) the fact that no civilian witnesses had been called to testify for the prosecution. The defense concluded by telling the jury that after hearing all the evidence, "you know what's missing, a credible story, a story you can trust . . . any assurances they got the right guy, any proof beyond a reasonable doubt." App. 322.

On rebuttal summation, the AUSA began by saying:

> [F]aced with what is overwhelming evidence in this case, the defense just did the only thing that they can do, which is again to focus on distractions, things that don't really bear on the fundamental question that you need to decide. Let's walk through some of the defense's arguments and talk about why they don't hold any water.

*Id.*

After going back through the arguments, evidence, and testimony in the case, the AUSA closed with the following statement:

> The defense has focused on distraction arguments to take your eyes off the ball. Don't do it. This is not a search for reasonable doubt. This is a search for truth and the truth is that the defendant possessed that gun on July 25, 2009. Hold the defendant accountable with the only verdict that's consistent with the evidence you have seen and heard in this case, a verdict of guilty.

App. 330-331. Defense counsel did not object to these statements.

*4. The Instructions*

After a short break following summations, the district court delivered its charge to the jury. Early in the charge, the court said the following on the government's burden of proof:

7

We've spoken about the presumption of innocence and reasonable doubt. You all know from your life experience, watching television, that the burden of proof in a criminal case is proof beyond a reasonable doubt. What is it? Okay. The law presumes a defendant to be innocent of all the charges against him. I told you that before. I, therefore, instruct you once again the defendant is to be presumed by you to be innocent throughout your deliberations on this indictment until such time, if ever, that you as a jury are satisfied that the government has proven the defendant guilty beyond a reasonable doubt.

Thus, the defendant, although accused of the crime in the indictment, begins the trial with a clean slate, that is, no evidence against him. The indictment, as I already told you, is not evidence of any kind, cannot be considered by you whatsoever.

App. 337-338.

The court further instructed, also at the start of the charge:

Now, the burden once again is always upon the government to prove guilt beyond a reasonable doubt. This is with respect to each of the elements that compose the crimes. This burden never shifts to the defendant. The law never imposes upon a defendant in a criminal case the burden or duty to call any witnesses or produce any evidence.

The defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government. The presumption of innocence alone, therefore, is sufficient to acquit a defendant.

App. 338. The district court also specifically advised the jury that if it "view[ed] the evidence as reasonably permitting either of two conclusions, one of innocence, the other of guilt, you must, of course, adopt the conclusion of innocence." App. 339. The court then cautioned that "[t]his does not mean, however, that the government's burden of proof is ever less than proof beyond

8

a reasonable doubt." *Id.* The court gave the remainder of its charge, after which the jury deliberated, and returned a guilty verdict the next day. Following sentencing, Williams timely filed the present appeal.

## DISCUSSION

On appeal, Williams argues that reversal of his conviction is required because the prosecution made improper statements in the course of summation that denied Williams a fair trial. A defendant who, like Williams, "seeks to overturn his conviction based on alleged prosecutorial misconduct in summation bears a 'heavy burden.'" *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (quoting *United States v. Feliciano*, 223 F.3d 102, 123 (2d Cir. 2000)). The defendant must show not simply that a particular summation comment was improper, but that the comment, "viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him," *id.* (internal quotation marks and citations omitted), such that "the resulting conviction [was] a denial of due process," *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quoting *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999)).

Where, as here, the defendant did not object at trial to the statements forming the basis of his appeal, the plain error standard applies, requiring us to reject any assignment of error that does not "amount to flagrant abuse" which "seriously affects the fairness, integrity, or public reputation of judicial

9

proceedings," and causes "substantial prejudice" to the defendant. *Id.* (internal quotation marks omitted). With these principles in mind, we consider each of Williams's assertions of prosecutorial misconduct in turn.

## I.

Williams argues first that the prosecution's assertions that the defense was "grasp[ing] at straws," "focus[ing] on distractions," and "attempt[ing] to take [the jury's] eyes off the ball" were improper attacks on defense counsel that require reversal. We disagree.

Just as we "see nothing inherently wrong with characterizing a defense tactic as desperate," *United States v. Elias*, 285 F.3d 183, 190 n.3 (2d Cir. 2002), we do not think it improper or excessive, without more, for a prosecutor to criticize defense arguments as merely being attempts to "grasp at straws" or "focus on distractions." Williams does not argue that the prosecutor mischaracterized the defense arguments in order to make them appear inconsequential. And as we have said before, "summations—and particularly rebuttal summations—are not detached exposition[s] . . . with every word carefully constructed . . . before the event." *Farhane*, 634 F.3d at 167 (internal quotation marks omitted) (second omission in original). "A prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992).

10

Similarly, in the context of a summation focused on the evidence, and on demonstrating for the jury why the prosecution established proof beyond a reasonable doubt, we do not deem a prosecutor's fleeting remarks to the effect that defense counsel was attempting to distract the jury to be improper. Here, the prosecutor twice cautioned the jury that defense counsel was trying "to take your eyes off the ball." This is a far cry, indeed, from the sort of sustained attack on the integrity of defense counsel that we held to be reversible error in *United States v. Friedman*, 909 F.2d 705, 708 (2d Cir. 1990) (reversing a conviction where, *inter alia*, the prosecution stated in summation that "some people [defense counsel] would have you pull down the wool over your eyes and forget all that, because while some people . . . go out and investigate drug dealers and prosecute drug dealers and try to see them brought to justice, there are others who defend them, try to get them off, perhaps even for high fees") (omission in original). *See also United States v. Millar*, 79 F.3d 338, 343-344 (2d Cir. 1996) (refusing to reverse a conviction where the prosecution stated in summation that the defense case was "hog wash" and a "smoke screen," and suggested that defense counsel was trying to "confuse" the members of the jury and "lead them astray"). Indeed, the remarks here amounted to nothing more than a legitimate "attempt to focus the jury's attention upon the evidence and away from defense counsel's claims." *Rivera*, 971 F.2d at 883. We see no error in these remarks, much less plain error.

11

## II.

Williams additionally argues that the prosecution's summation improperly vouched for the testimony of prosecution witnesses as "the truth" or "the absolute truth," and that the AUSA improperly stated at the close of rebuttal summation that "the truth is that the defendant possessed that gun on July 25, 2009." "Attorney statements vouching for the credibility of witnesses are generally improper because they imply the existence of" evidence not placed before the jury, *United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) (internal quotation marks and brackets omitted), and because "prosecutorial vouching 'carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence,'" *United States v. Newton*, 369 F.3d 659, 681 (2d Cir. 2004) (quoting *United States v. Young*, 470 U.S. 1, 18-19 (1985)).

Nonetheless, "what might superficially appear to be improper vouching for witness credibility may turn out on closer examination to be permissible reference to the evidence in the case." *Perez*, 144 F.3d at 210. Here, in characterizing the testimony of prosecution witnesses as "the truth" or the "absolute truth," the AUSA "did not suggest that [s]he had special knowledge of facts not before the jury." *Id.* Rather, in each of the instances cited by Williams as improper, it is clear from context that the AUSA was asserting that the statements in question were true because of specific evidence in the trial record,

12

and that after characterizing the statements as "the truth," the AUSA "then directed the jury's attention to the evidence supporting [her] contention." *Id.* Thus, in one of the instances cited by Williams, Appellant's Br. at 20, the AUSA said:

> Putting aside the defendant's statement, the demeanor and nature of the officer's testimony, your common sense, if that all wasn't enough, there's another reason that [] backs up that these officers are telling you the truth, [and that is] the ballistics evidence.

App. 300. As in *United States v. Perez*, this argument, which simply marshalled the evidence that the government urged proved its case, "did not imply the existence of extraneous proof" and cannot be characterized as improper vouching. 144 F.3d at 210 (internal quotation marks and brackets omitted).

Nor do we think that the AUSA improperly vouched for the credibility of witnesses or their testimony by her statement that "the truth is that the defendant possessed that gun on July 25, 2009." App. 330-331. This statement, made at the end of rebuttal summation, was immediately followed by the AUSA's request for the jury to "[h]old the defendant accountable with the only verdict that's consistent with the *evidence you have seen and heard in this case*, a verdict of guilty." App. 331 (emphasis added). Viewed in context, this statement was not improper vouching but a rhetorical flourish bringing the rebuttal summation to a close. As in *United States v. Miller*, 116 F.3d 641, 683 (2d Cir. 1997), "[w]e doubt that [this] statement . . . would have been viewed by

13

the jury as more than an exhortation to find [defendant] guilty based on the evidence."

### III.

Finally, Williams criticizes the AUSA's closing statement in rebuttal summation that "this is not a search for reasonable doubt. This is a search for truth . . . ." App. 330. As the government conceded at argument, this statement was improper and should not have been made. Though "arriving at the truth is a fundamental goal of our legal system," *United States v. Shamsideen*, 511 F.3d 340, 346 (2d Cir. 2008) (internal quotation marks omitted), "[a] variety of constitutional and procedural rules define the means by which truth is best ascertained in a free society," *id.*; foremost among those rules in a criminal prosecution are the presumption of innocence and the requirement of proof of guilt beyond a reasonable doubt.

To say that "this is not a search for reasonable doubt" but "a search for truth" has the potential to distract the jury from the bedrock principles that "even if the jury strongly suspects that the government's version of events is true, it cannot vote to convict unless it finds that the government has actually proved each element of the charged crime beyond a reasonable doubt," and "that if the evidence is insufficient to permit [the jury] independently to 'find the truth,' its duty, in light of the presumption of innocence, is to acquit." *Shamsideen*, 511 F.3d at 346-347. The prosecution thus erred here by failing to

14

frame the question for the jury "by reference not to a general search for truth but to the reasonable doubt standard that the law has long recognized as the best means to achieve the ultimate goals of truth and justice." *Id.* at 347.

Even if the AUSA's reference to a "search for truth" was both unwise and erroneous, however, that does not mean that reversal is required. The defense did not object to the statement challenged here, and our review is thus only for plain error. And under plain error review, Williams must demonstrate not only that there was an "error" that is "clear or obvious," but also that "the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; *and* . . . 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Zangari*, 677 F.3d 86, No. 10-4546, 2012 WL 1323189, at *7 (2d Cir. Apr. 18, 2012) (quoting *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010)) (emphasis added).

In this case, the AUSA asserted that "this is not a search for reasonable doubt" but "a search for truth" at the very end of rebuttal summation. This isolated remark was followed directly by the court's charge to the jury, which began with an extensive discussion of the presumption of innocence and the requirement that the government prove guilt beyond a reasonable doubt. App. 337-339. Further, in charging the jury on each of the elements of the offense charged, the district court repeatedly stated that the government was required

to prove those elements beyond a reasonable doubt. App. 351-356. We presume that jurors follow their instructions. *See United States v. Stewart*, 590 F.3d 93, 124 (2d Cir. 2009). And given the timing of these proper instructions (so soon after the improper remark was made), we cannot conclude that their practical effect would have been markedly different if Williams had properly objected and obtained a curative instruction.

At any rate, the Supreme Court has admonished that even "[i]nappropriate prosecutorial comments, standing alone, [do] not justify . . . revers[ing] a criminal conviction obtained in an otherwise fair proceeding." *Young*, 470 U.S. at 11. When considered in the context of the entire trial, we perceive no basis for concluding that Williams was prejudiced by the single improper comment here, much less that he was denied due process. Indeed, we cannot conclude that Williams received anything other than a fair trial. Williams has not made out a showing of plain error, and thus reversal of the conviction is not called for in this case.

## CONCLUSION

We have reviewed Williams's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of conviction is AFFIRMED.

16