13-0501-cr
United States v. Burke

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of January, two thousand fourteen.

PRESENT: RALPH K. WINTER,
GUIDO CALABRESI,
REENA RAGGI,
*Circuit Judges*.

----------------------------------------------------------------------

UNITED STATES OF AMERICA,
*Appellee*,

v.                                                      No. 13-0501-cr

JOHN A. BURKE,
*Defendant-Appellant,*

JAMES V. CADICAMO, DAVID D'ARPINO, MICHAEL D. FINNERTY, GUY T. PEDEN, ANGELO RUGGIERO, JR.,
*Defendants*.*

----------------------------------------------------------------------

APPEARING FOR APPELLANT:        YING STAFFORD, ESQ., New York, New York.

_____

* The Clerk of Court is directed to amend the official caption as shown above.

1

APPEARING FOR APPELLEE: JACQUELYN KASULIS (Amy Busa, Evan M. Norris, Whitman G.S. Knapp, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on January 30, 2013, is AFFIRMED.

Defendant John Burke stands convicted after a jury trial of racketeering conspiracy, see 18 U.S.C. § 1962(d), murder in aid of racketeering, see id. § 1959(a)(1), murder in connection with a continuing criminal enterprise, see 21 U.S.C. § 848(e)(1)(A), and use of a firearm in relation to a crime of violence, see 18 U.S.C. § 924(c)(1)(A)(iii). In addressing Burke's various appellate challenges to his conviction, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Jury Bias

Burke asserts that he was denied an impartial jury because the venire was exposed to a New York Post article about his case published on the first day of jury selection. In fact, only 16 of the 84 prospective jurors and two petit jurors had seen or heard of the article. Moreover, the record indicates that in the course of the trial court's careful voir dire, both petit jurors—one of whom had prior jury experience—unhesitatingly stated that the article would not influence them or affect their impartial assessment of the evidence.

2

In such circumstances, the district court acted well within its discretion in not dismissing the venire. See United States v. Elfgeeh, 515 F.3d 100, 128 (2d Cir. 2008) (according deference to district court assessment of juror impartiality absent abuse of discretion); see also Skilling v. United States, 130 S. Ct. 2896, 2918 (2010). Further undermining Burke's argument is his decision not to challenge for cause the two petit jurors exposed to the article, see Skilling v. United States, 130 S. Ct. at 2923–24; United States v. Ragland, 375 F.2d 471, 476 (2d Cir. 1967), and the fact that virtually all of the information in the article was put before the jury through evidence admitted at trial.

In urging otherwise, Burke seeks to have us apply a presumption of prejudice to the venire's exposure to the Post article, submitting that a larger number of prospective jurors likely read the article but did not acknowledge doing so because it would necessarily admit violation of earlier court instructions. We decline to presume prejudice based on such speculation, particularly as counsel was afforded an opportunity to propose further voir dire inquiry and did nothing to develop evidence supporting his speculation. In any event, the presumption of prejudice from media exposure attends only "extreme" cases. Skilling v. United States, 130 S. Ct. at 2915; see Murphy v. Florida, 421 U.S. 794, 798–99 (1975) (discussing circumstances where influence of media "pervaded the proceedings"). A review of the voir dire convincingly demonstrates that this is not such a case.

In sum, we conclude that Burke was not denied his right to be tried by a fair jury.

3

2.    Prosecutorial Misconduct

Burke submits that prosecutorial misconduct in summation and the district court's refusal to afford him surrebuttal denied him a fair trial.   To secure vacatur and a new trial on this ground, Burke bears a "heavy burden" because he must show not only that the prosecutor's actions were objectionable, but that they were so serious as to permeate the entire trial and deny him due process.   See, e.g., United States v. Williams, 690 F.3d 70, 74–75 (2d Cir. 2012).   That is not this case.

First, the prosecutor's use of the word "bogus" to dispute Burke's withdrawal defense did not rise to the level of severity warranting reversal.   See United States v. Millar, 79 F.3d 338, 343–44 (2d Cir. 1996) (reaching same conclusion regarding prosecutor's comments that defense was "hog wash" and defense counsel created a "smokescreen").   As this court has long recognized, a prosecutor is "not an automaton whose role in summation is limited to parroting factors already before the jury." United States v. Wilner, 523 F.2d 68, 74 (2d Cir. 1975).   Moreover, a summation is not a "detached exposition [such] as would be appropriate in a lecture," rather, it is "inevitably charged with emotion."   United States v. Wexler, 79 F.2d 526, 530 (2d Cir. 1935) (L. Hand, J.).   In any event, when defense counsel voiced objection, the district court instructed the prosecutor before the jury not to use the word "bogus" and instructed the jury that counsel's summations were not evidence—an instruction repeated in its formal charge. See United States v. Elias, 285 F.3d 183, 191–92 (2d Cir. 2002) (noting that curative

4

instruction in court's final charge sufficient where prosecutor's misconduct not severe). The totality of these circumstances demonstrate no denial of a fair trial.

Second, insofar as Burke complains of prosecutorial misconduct in rebuttal, his failure to object at trial limits our review to plain error, "requiring us to reject any assignment of error that does not amount to flagrant abuse which seriously affects the fairness, integrity, or public reputation of judicial proceedings, and causes substantial prejudice to the defendant." United States v. Williams, 690 F.3d at 70 (internal quotation marks omitted); see generally United States v. Marcus, 560 U.S. 258 (2010) (discussing plain error standard). Burke cannot make this showing with respect to prosecutorial comments suggesting he might be paroled before completing his prison term and resume criminal activity as he had when previously paroled. Such comments were fair rebuttal to the defense argument that Burke "may never come home." Trial Tr. 2221, Gov't App. 230. See United States v. Farhane, 634 F.3d 127, 167–68 (2d Cir. 2011).

As for the prosecutor's observation that "defense witnesses lie," the statement responded to Burke's summation attack on the credibility of cooperating witness Peter Zuccaro, who had admitted committing perjury when testifying as a defense witness at the 1986 trial of Gambino family boss John Gotti, Sr., and whom defense counsel suggested was similarly motivated to lie in Burke's trial based on the "cash and prizes" he was receiving from the government for his cooperation. "Prosecutors have greater leeway in commenting on the credibility of their witnesses when the defense has attacked that

5

credibility." United States v. Perez, 144 F.3d 204, 210 (2d Cir. 1998). Insofar as Burke now complains that the prosecutor's comments might have been understood to suggest that his defense witnesses were lying, we do not think the context, plainly focused on Zuccaro, supports that inference, a conclusion reinforced by Burke's failure to object when he heard the remark.

Finally, we identify no abuse of discretion in the district court's denial of surrebuttal. See United States v. Bautista, 252 F.3d 141, 145 (2d Cir. 2001).

3.    Lay Opinion Testimony

Burke argues that prosecution witnesses Anthony Ruggiano, Jr. and Pasquale Andriano were improperly allowed to provide lay opinion testimony on Burke's state of mind in violation of Fed. R. Evid. 701. "We review a trial court's evidentiary rulings deferentially, and we will reverse only for abuse of discretion." United States v. Quinones, 511 F.3d 289, 307 (2d Cir. 2007). We identify no such abuse here. Ruggiano's negative response when asked if he had ever heard that Burke was transferred to another crew stated a fact, not an opinion. Insofar as his negative response to an inquiry as to whether Burke's status in the Gambino family changed in any way, and Andriano's testimony that Burke was a member of the Gambino family for "[h]is entire life," Trial Tr. 414, could be viewed to express opinions, they satisfied the requirements of Rule 701, see United States v. Garcia, 413 F.3d 201, 211 (2d Cir. 2005), and were relevant to the issue of Burke's purported withdrawal from the conspiracy prior to July 31, 2003.

6

4. <u>Sufficiency of the Evidence</u>

Burke argues that the evidence was insufficient to support his conviction for racketeering conspiracy or for either of the two murder charges.

While we review a sufficiency challenge <u>de novo</u>, we "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." <u>United States v. Chavez</u>, 549 F.3d 119, 124 (2d Cir. 2008) (internal quotations marks and alterations omitted). We will affirm the conviction if "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original); <u>accord</u> <u>United States v. Jones</u>, 531 F.3d 163, 168 (2d Cir. 2008).

a. <u>Racketeering Conspiracy</u>

Burke argues that evidence of his withdrawal from the Gambino family prior to the July 31, 2003 start of the limitations period precluded his conviction for racketeering conspiracy. The argument fails when we assume, as we must on sufficiency review, that the jury discredited Burke's witnesses who testified to his purported withdrawal and credited prosecution witnesses who testified to his continued involvement in and receipt of benefits from the crime family into the limitations period. <u>See</u> <u>United States v. Payne</u>, 591 F.3d 46, 60 (2d Cir. 2010).

7

b.    Gebert Murder

Burke contends that the evidence of his involvement in the July 12, 1996 murder of John Gebert was insufficient to support either of the two murder counts of conviction. In fact, a number of witnesses who were themselves involved in the Gebert murder—Pasquale Andriano, Michael Malone, and Peter Zuccaro—testified that Burke assisted in planning the murder and drove the getaway vehicle. Further, Anthony Ruggiano, Jr. stated that when he questioned Burke about the Gebert murder, Burke effectively admitted his participation, replying "we rolled up on him and blasted him." Trial Tr. 192, Gov't App. 106. Although Burke's ex-wife and ex-mother-in-law provided him with an alibi for the night of the Gebert murder, we must assume that a jury resolved the testimonial conflict in favor of the prosecution, see United States v. Payne, 591 F.3d at 60, in which case the evidence was sufficient to support the murder convictions.

5.    Jury Instructions

a.    Perjurious Witnesses

Burke submits that the trial court erred by denying his request for a charge specifically addressing the credibility implications of government witnesses who admitted to prior perjury. "To secure reversal based on a flawed jury instruction, a defendant must demonstrate both error and ensuing prejudice." United States v. Quinones, 511 F.3d at 313. Burke cannot make that showing here.

8

The district court charged as follows:

> If a witness is shown knowingly or willfully to have testified falsely concerning any material matter, or to have previously committed perjury, you have a right to distrust such witness's testimony in other particulars and give it such credibility as you think it deserves.

Trial Tr. 2335:5–9. Gov't App. 252. This was sufficient to allow Burke to argue that the jury should not credit government witnesses who had previously committed perjury. "While a defendant is entitled to any legally accurate jury instruction for which there is a foundation in the evidence, he does not have a right to dictate the precise language of the instruction." United States v. Banki, 685 F.3d 99, 105 (2d Cir. 2012).

b.      Withdrawal Charge

Burke faults the district court for not using his proposed instruction on withdrawal in charging the jury. Because Burke failed to object to the version of the charge given as required by Fed. R. Crim. P. 30(d), we review only for plain error, which is not present here. See United States v. Agrawal, 726 F.3d 235 (2d Cir. 2013).[1] Although Burke complains that the instruction given was more favorable to the prosecution than the one he proposed, he does not contend that the challenged charge erred in stating the applicable principles of law, much less show that such error is plainly recognized by precedent or that he was prejudiced as a result or the fairness of the proceedings called into question.

---

[1] Because we identify no plain error, we need not decide whether defense counsel's statement that he had "no objection" to the charge constituted "true waiver, negating even plain error review." United States v. Hertular, 562 F.3d 433, 444 (2d Cir. 2009).

Accordingly, we conclude that Burke's jury instruction challenges are meritless.

6.      Collective Errors

Burke argues that even if no single trial error warranted reversal, the errors collectively demand such relief under the harmless standard set forth in Kotteakos v. United States, 328 U.S. 750 (1946).   Because we reject Burke's claims of error, we necessarily reject his claim that the collective effect of these "errors" had a "substantial and injurious effect or influence in determining the jury's verdict."   Id. at 776.

7.      Conclusion

We have considered Burke's remaining arguments on appeal and conclude that they are without merit.   Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court