22-691
*United States v. Matos*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of March, two thousand twenty-four.

PRESENT:

> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                No. 22-691

JESUS MIGUEL MATOS,

> *Defendant-Appellant.*\*

_____
_____

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Defendant-Appellant:    ROBERT A. CULP, Law Office of Robert A. Culp, Garrison, NY.

For Appellee:    JULIANA MURRAY (Nicolas Roos, James Ligtenberg, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 29, 2022 judgment of the district court is **AFFIRMED**.

Jesus Miguel Matos appeals a judgment of conviction following a jury trial in which he was found guilty of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951; attempted Hobbs Act robbery in violation of 18 U.S.C. §§ 1951 and 2; conspiracy to distribute and possess with intent to distribute at least one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, the attempted robbery and conspiracy to distribute counts in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. On appeal, Matos argues that the district court erred in admitting evidence about his prior criminal acts and

2

in administering an incorrect jury instruction as to drug weight.   We assume the parties' familiarity with the underlying facts, procedural history, and issues, to which we refer only as necessary to resolve this appeal.

Matos was arrested, along with two coconspirators, as part of a reverse-sting operation after the group conspired to rob a purported heroin shipment.   The group's plan was to intercept that delivery – which an associate had informed them would include ten kilograms of heroin – while armed; they then planned to resell the heroin and keep the proceeds for themselves.   Unbeknownst to Matos and the group, there was no heroin shipment, and the associate was a confidential source who, at the direction of federal agents, had fabricated the story of the rumored delivery.   As soon as Matos arrived at the robbery location – in a car with a loaded gun next to him – agents surrounded and arrested him and his coconspirators.

At trial, the government introduced considerable evidence of Matos's guilt, including testimony from one of Matos's coconspirators (Braulio Valette), recorded conversations in which Matos planned the robbery, and surveillance footage of Matos and his group meeting to finalize the plan.   Following the jury's

verdict, the district court sentenced Matos to a term of imprisonment of 180 months.

## I. Other-Crimes Evidence

Matos first argues that the district court erred when it permitted the government to introduce – through Valette's testimony – evidence of Matos's past criminal conduct, including various burglaries, drug transactions, gun sales, and shootings. We disagree.

Typically, "other[-]crimes" evidence is regulated by Federal Rule of Evidence 404(b), which bars the introduction of evidence of past bad acts for the purpose of proving a defendant's "propensity" to commit crimes. *See United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks omitted). But many so-called "other crimes" are still admissible for other, permissible purposes. Significantly, when a conspiracy is charged, "uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003) (internal quotation marks omitted). For instance, "evidence of uncharged criminal activity is not considered other[-]crimes evidence under [Rule] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding

4

the charged offense, or if it is necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44 (internal quotation marks omitted). Moreover, other-crimes evidence is admissible to prove a defendant's mental state, including "intent" or "knowledge." Fed. R. Evid. 404(b)(2). The district court has "wide discretion" in determining what falls within the scope of (and is inadmissible under) Rule 404(b), and "we will reverse only for abuse of discretion." *Carboni*, 204 F.3d at 44.

We see no such abuse in the district court's decision to admit the challenged evidence. As the district court explained, Valette's testimony about Matos's prior crimes was direct evidence of the charged conspiracy. The fact that Matos and his coconspirators had previously committed crimes together, including an attempted robbery, demonstrated the mutual "trust" that prompted the others to invite Matos to join the planned robbery. App'x at 21. Valette also testified that Matos had bragged about other robberies and drug transactions, which provided necessary background information to explain why Matos was selected for a job involving crimes of the same sort. In addition, this testimony rebutted one of Matos's key defenses: that he did not "knowingly and intentionally join[]" the conspiracy. *Id.* At trial, Matos attempted to develop a narrative that he was

5

merely a "young man" who was reluctant to join the conspiracy but ultimately deferred to his older coconspirators. Supp. App'x at 73; *see id.* at 75 (eliciting testimony that Matos was using terms of "respect," including a Spanish term for "sir," when talking to his "elder" coconspirators); *id.* at 86 (eliciting testimony that a coconspirator was over twenty years older than Matos); *id.* at 87 (attempting to elicit testimony that a confidential informant called Matos "baby face"). By introducing evidence of Matos's prior involvement in robberies, the government demonstrated that Matos was far from inexperienced or unwilling, directly undercutting an argument regarding Matos's intent that Matos himself had put in issue. Rule 404(b) clearly permits the introduction of prior bad acts for just that purpose. *See United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990) (affirming district court's admission of other-crimes evidence where defendant claimed that "his conduct had an innocent explanation" because he lacked the "intent" to commit the offense).

Nor are we persuaded that evidence of Matos's other crimes was unduly prejudicial under Federal Rule of Evidence 403. Evidence of other crimes is generally not unduly prejudicial when those past crimes "did not involve conduct more serious than the charged crime and the district court gave a proper limiting

6

instruction." *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000). That is precisely the case here, as the district court provided a proper limiting instruction and the challenged testimony was no more "sensational or disturbing" than Matos's alleged participation in the alleged offense, which involved a scheme to rob the shipment by force and to shoot the dealers if necessary. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).

We likewise reject Matos's challenge to the government's summation and rebuttal, which referenced the other-crimes evidence. *See* App'x at 117–18 ("[Y]ou know why he did it. Not because he was some . . . baby-faced inexperienced kid" but "because he is a drug dealer. Because he is a robber. Because he uses guns and drugs and sell[s] them. That's what he does."). Matos contends that these statements by the government "exploited" the other-crimes evidence for an improper propensity purpose. Reply at 5.

To obtain a reversal of a conviction due to prosecutorial misconduct at summation, not only must a defendant show that the statement was improper, "but that the comment, viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him, such that the resulting conviction was a denial of due process."

7

*United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012) (alterations, citation, and internal quotation marks omitted).   Given the overwhelming evidence presented against Matos, even if those statements were improper, we cannot say that they substantially prejudiced him.   At sentencing, Matos's own trial attorney admitted that "[t]he evidence was overwhelming with respect to Mr. Matos.   He had no defense of law or fact."   App'x at 251.

## II.  Drug Weight Instruction

Matos also asserts that the district court delivered an incorrect instruction that permitted the jury to assess drug weight without regard to foreseeability or Matos's actual knowledge.   He points to a section of the jury charge in which the district court identified three quantities of narcotics that a defendant is legally responsible for when charged in a conspiracy:   (1) all quantities that he "personally conspired to distribute," (2) all quantities that his "co[]conspirators conspired to distribute" that were "known or reasonably foreseeable" to the defendant and within the scope of the conspiracy, and (3) all quantities involved in any "acts of the conspiracy in which the defendant personally and directly participated," even if he did not know or reasonably foresee the specific quantity of narcotics involved in those acts.   *Id.* at 129.   Matos takes issue with only the

8

third category, arguing that the instruction improperly permitted the jury to attribute drug quantities to him on a strict liability basis. We are not persuaded.

Because Matos did not object to this instruction when it was given, we review for plain error. Matos must therefore show that (1) there was an "error" (2) that was "clear or obvious" (3) that "affected the outcome of the district court proceedings" and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (alterations and internal quotation marks omitted). Here, the district court's instruction mirrors – to a tee – our precedent that "the government need not prove *scienter* as to drug *type* or *quantity* when a defendant personally and directly participates in a drug transaction underlying a conspiracy charge." *United States v. Andino*, 627 F.3d 41, 47 (2d Cir. 2010).

Matos nevertheless insists that it was improper for the district court to give this charge in this specific case because neither Matos nor his coconspirators ever "personally" handled drugs during trafficking and instead only conspired with others to distribute nonexistent drugs as part of a sting operation. Reply at 11. The argument is plausible, and the government came close to acknowledging as much during oral argument when it agreed that "there is a question of whether

9

[this specific instruction] should have been given" in a reverse-sting operation like that involved here. Oral Arg. at 13:25–27. But we generally do not find plain error absent "binding precedent from the Supreme Court or this Court" that contradicts the district court's decision. *United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004). Here, Matos cites no precedent – and we are aware of none – prohibiting a district court from charging a jury in a so-called "dry conspiracy" or reverse-sting operation case with the instruction given here.

Nor for that matter do we see how the challenged portion of the instruction could have "affected the outcome" of Matos's trial, as is required to show plain error. *Marcus*, 560 U.S. at 262 (internal quotation marks omitted). To find Matos guilty of this count, the jury had to find Matos responsible for only "one kilogram" of heroin, App'x at 123 – a finding that the jury could easily have made based on the unchallenged remainder of the charge, which instructed that Matos was responsible for all drug quantities that he "conspired to distribute," as well as all quantities that his coconspirators conspired to distribute that were "known" or "foreseeable" to him, *id.* at 129. The jury heard "overwhelming" evidence that Matos knowingly conspired to distribute ten kilograms of heroin, *id.* at 251, well

over the one kilogram required to convict.   We therefore reject his argument of plain error.

*     *     *

We have considered Matos's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court