25-708-cr
*United States v. Ragano*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9ᵗʰ day of April, two thousand twenty-six.

PRESENT:
> JOSÉ A. CABRANES,
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

      *Appellee*,

      v.                                  25-708-cr

JOHN RAGANO,

      *Defendant-Appellant.*

---

FOR APPELLEE: DEVON LASH (David C. James, Andrew Reich, *on the brief*), Assistant United States Attorneys, *for* Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, Brooklyn, New York.

FOR DEFENDANT-APPELLANT:                    JOEL M. STEIN, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Hector Gonzalez, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on March 20, 2025, is **AFFIRMED**.

Defendant-Appellant John Ragano appeals from a judgment of conviction entered by the district court, following a jury trial at which Ragano was found guilty of extortionate collection of credit, in violation of 18 U.S.C. §§ 894(a)(1) and 2.[1]   The conviction related to a loan of $150,000 that Ragano made to Vincent Martino in 2020, requiring 1.5 percent interest to be paid per week. In 2021, Martino paid Ragano more than $50,000 in interest on the loan, with no portion of those payments reducing the $150,000 principal of the loan.   In November 2022, following his arrest by the Federal Bureau of Investigation ("FBI"), Ragano pled guilty to, *inter alia*, conspiracy to commit extortionate collection of credit in connection with his loan to Martino.   *See United States v. Alimena*, No. 21-cr-466 (E.D.N.Y.).   In April 2023, Ragano was sentenced principally to 57 months' imprisonment in the *Alimena* case and self-surrendered for his sentence in July 2023. The indictment in the instant case alleged that, during the *Alimena* case, Ragano continued to use extortionate means to collect the debt owed to him by Martino.   Following the jury's guilty verdict on that charge, Ragano was sentenced principally to 37 months' imprisonment, to be followed by three years of supervised release.

On appeal, Ragano argues that his conviction should be overturned because:   (1) the trial

---

[1]  Ragano was acquitted of the other charges in the indictment, namely, extortionate collection of credit conspiracy, in violation of 18 U.S.C. § 894(a)(1), harassment of a witness, in violation of 18 U.S.C. §§ 1512(d)(2) and 2, and witness tampering, in violation of 18 U.S.C. §§ 1512(b)(3) and 2.

evidence was insufficient to convict him of extortionate collection of credit; (2) the district court erred in precluding the admission of certain text messages between Martino and the FBI; and (3) the government improperly exploited the district court's erroneous evidentiary ruling in its rebuttal summation. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.       Sufficiency of the Evidence

"A defendant challenging a conviction based on a claim of insufficiency of the evidence bears a heavy burden." *United States v. Wilkerson*, 361 F.3d 717, 724 (2d Cir. 2004). We review such challenges *de novo* and "must uphold the conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Thiam*, 934 F.3d 89, 95 (2d Cir. 2019) (emphasis in original) (internal quotation marks and citation omitted). "In performing this analysis, we are required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict," and "consider the evidence presented in its totality, not in isolation." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021) (internal quotation marks and citation omitted).

To convict Ragano of the charge under Section 894(a)(1), the government had to prove beyond a reasonable doubt that Ragano "knowingly participat[ed] in any way . . . in the use of any extortionate means . . . to collect or attempt to collect any extension of credit." 18 U.S.C. § 894(a)(1). "Extortionate means" is defined as "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person." *Id.* § 891(7). We have explained that, "[w]ith regard to the defendant's state of mind, the government must prove that he intended by his conduct to instill

3

fear of harm in the victim borrower." *United States v. Lombardozzi*, 491 F.3d 61, 68–69 (2d Cir. 2007). Ragano argues that the evidence presented at trial was legally insufficient to support his conviction because, given the lack of evidence regarding Ragano's threatening conduct in connection with his collection activities for the Martino loan, the government failed to demonstrate the requisite "extortionate intent." Appellant's Br. at 29.

Upon review of the trial record, we find that the evidence was sufficient to sustain Ragano's conviction. Drawing all reasonable inferences in the government's favor, the evidence at trial established that Ragano knowingly participated in the use of extortionate means to attempt to collect an extension of credit from Martino, while Ragano was on pretrial release in the *Alimena* case and before he self-surrendered in July 2023 to serve his sentence in that case. As background, the government introduced evidence about the origin and terms of the $150,000 loan through both the testimony of Martino and Andrew Koslosky, an associate of the Colombo and Bonanno crime families of La Cosa Nostra who assisted Ragano in collecting payments on the Martino loan in late 2020 and early 2021. Koslosky testified that Ragano was a made member of the Bonanno crime family, who promoted his violent reputation as a Bonanno soldier to make collections on his loans. Koslosky explained that he warned Martino on several occasions not to fall behind on his payments to Ragano because Ragano was threatening to harm Martino if he was late on his payments. In particular, Koslosky testified that Ragano told him that, if Martino did not make his payments on time, "[w]e would slap the sh\*\* out of him," a message which Ragano intended Koslosky to pass along to Martino. Trial Tr. at 371–72.

In 2022, even though the two men were co-defendants in *Alimena* and were ordered to have no contact with one another or other organized crime members as a condition of pre-trial

4

supervision, the evidence at trial showed sustained efforts by Ragano to collect payments from Martino on the loan through extortionate means. Martino testified that, in connection with three *Alimena* status conferences which both Ragano and Martino attended, Ragano discussed the loan with Martino and told him after the second conference that a close friend of Ragano would be reaching out to him regarding the loan. Martino explained that, as these discussions progressed, Ragano was "getting more and more frustrated and aggravated" and "[m]ore aggressive" because Martino was not responding to the intermediary's efforts to contact him. *Id*. at 513–14. Martino further testified that, on January 2, 2023, Ragano called Martino using the intermediary's phone and left him a voicemail wishing him a Happy New Year and asking him where he had been, which Martino interpreted as him asking about the loan. Following his receipt of text messages from the intermediary and Ragano's voicemail, Martino contacted the FBI and began recording his separate interactions with Ragano and the intermediary. During one recorded meeting with the intermediary in March 2023, which took place when the intermediary showed up in the parking lot outside Martino's office, the intermediary explained that Ragano wanted Martino to repay the entire amount of the loan and the intermediary stated, "[n]o one is looking for anyone to get hurt," which Martino explained, "[i]n street terminology, that's a nice way of saying if the loan is not paid or monies are not paid, someone's going to get hurt." *Id*. at 547. Martino made three $1,000 payments to Ragano, through the intermediary, in March and April 2023.

These various interactions culminated in a recorded meeting between Ragano and Martino on July 5, 2023, five days before Ragano's *Alimena* surrender date, when Martino showed up at Ragano's office at a salvage yard to discuss the loan. Martino walked into Ragano's office unannounced and, after Martino accused Ragano of cooperating with the government (and Ragano

5

accused Martino of the same), they began discussing the money that Martino owed to Ragano, which included the following exchange:

> RAGANO: You owe me my f***ing money, let's see how you're gonna do when I get out.
>
> MARTINO: Okay.
>
> RAGANO: You want to duck me right now? Fine, that's what I want to know.
>
> MARTINO: I'm not ducking you, I'm here, I'm here.
>
> RAGANO: So if I f***ing slap the sh** out of you, you're gonna tell on me?
>
> MARTINO: No.
>
> RAGANO: I try to make this like a friendly thing-
>
> MARTINO: That's what I'm trying to do-
>
> RAGANO: I said you give me my f***ing money and we'll call it even.

App'x at 25. Later in the conversation, Ragano added, "I'll see you when I get out tough guy." *Id*. at 26. Martino testified that, while they were arguing, two men walked up behind Ragano holding a metal tool, and Martino exited the building.

Ragano asserts that this recording was insufficient to sustain his conviction because any threatening language by him during that conversation was in response to Martino's cooperation accusation, rather than related to the loan. However, we have emphasized that "[t]o sustain the jury's verdict, the government need not disprove every possible hypothesis of the defendant's innocence . . . [a]nd when there are competing inferences, we must defer to the jury's choice, because it is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." *United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014) (internal

6

quotation marks and citations omitted).   Moreover, when assessing a sufficiency challenge, we consider the evidence presented at trial "in its totality, not in isolation."   *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008) (internal quotation marks and citation omitted).   Here, when all of the trial evidence is considered—including the testimony of Koslosky and Martino, as well as the July 5th recording and the other recordings introduced at trial—there was more than sufficient evidence from which the jury could rationally find that Ragano intended to threaten, and did in fact threaten, Martino over his failure to make payments on the loan.[2]   In sum, we agree with the district court that the evidence was sufficient to support the guilty verdict.

## II.   Evidentiary Ruling

Ragano also argues that the district court erred in excluding text messages between Martino and FBI agents regarding Martino's plan to meet with the intermediary as inadmissible hearsay not subject to an exception under Federal Rule of Evidence 803(3), and unduly prejudicial under Federal Rule of Evidence 403.   In a text exchange on June 7, 2023, Martino suggested to the FBI that he schedule a meeting with the intermediary, during which the intermediary might threaten

---

[2]   We are similarly unpersuaded by Ragano's claim that "[t]he jury's acquittal . . . on three of four counts—including the conspiracy charge involving the same loan and time period—demonstrates the insufficiency of the Government's evidence of threats."   Appellant's Br. at 28.   As a threshold matter, the acquitted charges have different elements than Section 894(a), and there was nothing inconsistent about the jury finding that there was proof beyond a reasonable doubt that Ragano knowingly participated in an extortionate collection of credit from Martino, but that he did not conspire with the intermediary to do so. *See, e.g.*, *United States v. Mulder*, 273 F.3d 91, 114 (2d Cir. 2001) ("[T]he jury's decision to acquit . . . on the substantive . . . count does not indicate that it found he did not conspire to extort . . . because the elements of the two crimes are different.").   In any event, "[i]t is well established that a criminal defendant convicted by a jury on one count cannot attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count."   *United States v. Martinez*, 110 F.4th 160, 172 (2d Cir. 2024) (alteration adopted) (internal quotation marks and citation omitted).   Thus, "[w]e . . . look only to the evidence presented to the jury, not to its verdicts on other counts, when assessing the factual sufficiency of a conviction."   *Id*. at 173.

Martino or otherwise indicate that Ragano was "frustrated" with Martino's lack of payments. App'x at 64. Ragano contends that the district court erred in excluding the texts because they were "highly relevant evidence which would have supported [his] defense by negating proof of his intent to commit extortion." Appellant's Br. at 12. We disagree.[3]

We review a district court's decision to exclude evidence for abuse of discretion. *See United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021).[4] Under that deferential standard, "we will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Litvak*, 889 F.3d 56, 67 (2d Cir. 2018) (internal quotation marks and citations omitted). That "broad discretion" applies to the district court's determination as to whether to exclude evidence under the Rule 403 balancing. *United States v. Awadallah*, 436 F.3d 125, 134 (2d Cir. 2006). Therefore, "[u]nder Rule 403, so long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *Id*. at 131.

We conclude that, even if the June 7th text messages were not being offered by Ragano for their truth and could therefore overcome a hearsay objection, the district court did not abuse its

---

[3] Although Ragano appears to also argue that other June 2023 text messages between Martino and the FBI were improperly excluded by the district court, we agree with the district court that Ragano never sought to introduce those other text messages at trial; rather, in his opposition to the government's motion to preclude, Ragano referred only to a proposed "Defense Exhibit C," consisting of the text messages on June 7, 2023. App'x at 73. Thus, our analysis focuses on the June 7th messages. However, we note that, even if Ragano had sought to introduce the other text messages in the district court, their exclusion by the district court would not have been erroneous, for the same reasons discussed *infra* with respect to the June 7th messages.

[4] Ragano's argument that *de novo* is the proper standard of review for evidentiary rulings ignores our well-established precedent to the contrary.

discretion in excluding them. As an initial matter, to the extent that the text messages between Martino and the FBI could be probative as to an entrapment defense, Ragano conceded in the district court that he was not pursuing an entrapment defense and was not seeking to introduce those messages for that purpose. *See, e.g.*, App'x at 39 (defense counsel emphasizing "the defendant's repeated disavowal of any claim of entrapment or government misconduct"). As the district court correctly noted, in the absence of an entrapment defense, those text messages were irrelevant to the charges against Ragano, as they did not bear on whether Ragano threatened Martino, or whether he intended to threaten Martino. In particular, regardless of what the text messages might show about Martino's relationship with the FBI, or his plans for a meeting with the intermediary nearly one month before the July 5th meeting with Ragano, it is well-established that "proof of a victim borrower's state of mind is not an element" of the offense of extortionate collection of credit. *Lombardozzi*, 491 F.3d at 68; *see United States v. Sears*, 544 F.2d 585, 588 (2d Cir. 1976) ("[I]t is the conduct of the defendant, not the victim's individual state of mind, to which the thrust of the statute is directed.") (internal quotation marks and citation omitted). Moreover, with respect to any relevance as to Martino's credibility, the district court made clear that Ragano would still "be able to cross-examine [Martino] on his cooperation," including any benefit he was seeking from the cooperation, as well as his intentions heading into the July 5th meeting with Ragano. App'x at 47; *see also id.* (district court emphasizing that, "[i]f defendant thinks there was something improper about the July 5th encounter, he has a tape recording of it and will be able to cross-examine [Martino] about it"). Thus, the district court reasonably determined that "the probative value of the text messages [was] low." *Id*.

Moreover, the district court acted within its discretion in concluding, under Rule 403, that

9

any probative value of the text messages was substantially outweighed by the danger of unfair prejudice and the potential for confusing and misleading the jury. More specifically, the district court expressed concern that Ragano was attempting, "through the back door," to improperly assert "an entrapment-like defense," explaining:

> The fact that the defendant is arguing that he was somehow improperly provoked by [Martino] on July 5th and that that provocation goes to the defendant's state of mind is simply another of [sic] way of saying that [Martino] enticed or entrapped him into having a violent or threatening outburst on that day. That's the very definition, in essence, of the entrapment defense that defendant says he's not asserting.

*Id*. at 46–47. In sum, because the district court "conscientiously balanced the proffered evidence's probative value with the risk for prejudice" and jury confusion, and its determination was not "arbitrary or irrational," *Awadallah*, 436 F.3d at 131, there is no basis to disturb the district court's exercise of its discretion in excluding the text messages under Rule 403.

## III. Rebuttal Summation

Finally, Ragano argues that the government improperly exploited the exclusion of text messages by making a misleading argument in its rebuttal summation. In particular, Ragano points to this argument in the government's rebuttal summation:

> And this idea that Martino and the FBI were trying to come up with evidence and that Martino was trying to lure John Ragano into committing crimes is even more desperate and it's completely contradicted by the actual evidence in the case.
>
> First of all, you heard Martino testify that he did, in fact, think that John Ragano had cooperated with the Government on the marijuana scheme. It wasn't something that he sat around and concocted in order to provoke John Ragano.
>
> [Defense counsel] said that because he said that on the stand, he was a liar who committed perjury. You know he was telling you that that's what he believed. He told you he believed that because he heard it on the street. That wasn't a lie.

10

Trial Tr. at 889.

A defendant who alleges "prosecutorial misconduct in summation bears a heavy burden." *United States v. Williams*, 690 F.3d 70, 74–75 (2d Cir. 2012) (internal quotation marks and citation omitted). "The defendant must show not simply that a particular summation comment was improper," but that "the comment, viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced [them], such that the resulting conviction was a denial of due process." *Id.* at 75 (alteration adopted) (internal quotation marks and citation omitted). Because Ragano did not object to these statements at trial, we review any alleged misconduct under a plain error standard and "reject any assignment of error that does not amount to flagrant abuse which seriously affects the fairness, integrity, or public reputation of judicial proceedings, and causes substantial prejudice to the defendant." *Id.* (internal quotation marks and citation omitted).

Here, the district court did not plainly err in concluding, in its denial of the defendant's motion for a new trial, that there was no misconduct during the rebuttal summation because "the government's remarks about Mr. Martino's belief that Defendant was cooperating with law enforcement [were] consistent with the testimony the jury heard at trial," and "the text messages were not inconsistent with the testimony heard at trial or the government's argument in summation." App'x at 109–10. As we have explained, "where [as here] the defense summation makes arguments and allegations against the government, the prosecutor may respond to them in rebuttal." *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998); *see also United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) ("Prosecutors have greater leeway in commenting on the credibility of their witnesses when the defense has attacked that credibility."); *United States v.*

11

*Casamento*, 887 F.2d 1141, 1189 (2d Cir. 1989) ("The government has broad latitude in the inferences it may reasonably suggest to the jury during summation.").

In any event, as discussed above, the sincerity of Martino's belief that Ragano was a cooperator, and Martino's communications with FBI agents, had no bearing on whether Ragano threatened him in connection with the loan collection. Indeed, at the conclusion of these brief remarks in the rebuttal summation regarding Martino's motivation in response to defense counsel's arguments, the prosecutor told the jury that Martino's motivation "doesn't matter when you think about the actual series of events on that day and the actual elements of the crimes that John Ragano is accused of here in this case," and instead, "[w]hat matters is John Ragano's actions." Trial Tr. at 889. In sum, even if the prosecutor's remarks about Martino's motivations were inconsistent with the text messages, those remarks did not constitute a "flagrant abuse" that caused substantial prejudice warranting a new trial. *Williams*, 690 F.3d at 75 (internal quotation marks and citation omitted).

\*        \*        \*

We have considered Ragano's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court